IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


MIKE C. MATSON,

                    Plaintiff,

          v.                        CASE NO.  11-3192-SAC

STATE OF KANSAS,
et al.,

                    Defendants.

### MEMORANDUM AND ORDER

     This civil complaint, 42 U.S.C. § 1983, was filed pro se by an
inmate of the Norton Correctional Facility, Norton, Kansas (NCF).
Having considered the materials filed, the court finds that
plaintiff has not satisfied the filing fee and that the complaint is
deficient in numerous respects.  Mr. Matson is given the opportunity
to cure these defects by filing an Amended Complaint.


### FILING FEE

     Mr. Matson filed an Application to Proceed Without Prepayment
of Fees (WPF)(Doc. 2).  However, shortly thereafter, he submitted
$300.00 for payment of fees.  He also sent a letter stating he had
learned the fee is $350.00, that he no longer wished to proceed
without prepayment, and that he was requesting a withdrawal of
another $50.00 to be sent to the court.  This letter was received on
November 10, 2011, but the court has not received any additional
funds from Mr. Matson.  Plaintiff has neither paid the full filing
fee nor submitted a complete motion to proceed WPF.

     28 U.S.C. § 1915 requires that a prisoner seeking to bring a
civil action WPF submit an affidavit described in subsection (a)(1),

and a "certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing" of the action "obtained from the appropriate official of each prison at which the prisoner is or was confined." 28 U.S.C. § 1915(a)(2). This action may not proceed until Mr. Matson has complied with § 1915(a) by either paying the remainder of the fee or submitting the certified statement of his inmate account for the appropriate six-month period to support his WPF motion, and may be dismissed without further notice if plaintiff fails to satisfy the filing fee prerequisite within the time allotted.

**<u>SCREENING</u>**

Because Mr. Matson is a prisoner, the court is required by statute to screen his complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune to such relief. 28 U.S.C. § 1915A(a) and (b).

A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007). Nevertheless, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1110 (10th Cir. 1991). To avoid dismissal, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555, 570 (2007). The court

"will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." Whitney v. New Mexico, 113 F.3d 1170, 1173-74 (10th Cir. 1997). The complaint must offer "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Id. at 555. The court accepts all well-pleaded allegations in the complaint as true. Anderson v. Blake, 469 F.3d 910, 913 (10th Cir. 2006). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. Twombly, 550 U.S. at 558. Having screened all materials filed, the court finds the complaint filed in this case is subject to being dismissed for the following reasons.

## COMPLAINT NOT UPON FORMS

Plaintiff's pro se complaint is not upon forms as required by local court rule. Nor is it a short and plain or clear statement of his claims. Mr. Matson is required to submit an Amended Complaint upon court-provided forms. The Amended Complaint, upon its filing, shall completely supercede the original complaint, which will not be considered further herein. It follows that plaintiff may not simply refer to the contents of his original complaint, but must include in his Amended Complaint all claims and all allegations that he wishes to present to the court.

Plaintiff must follow the instructions and properly utilize the forms, which means he will be required to designate separate, numbered counts or grounds upon which he seeks relief; and follow each count with only those facts that are relevant to that claim. The court has attempted herein to delineate the claims that

plaintiff raises in his original complaint, and discuss the deficiencies in each. Plaintiff is given the opportunity to cure those deficiencies by filing his Amended Complaint, in which he must either cure the deficiencies or omit the deficient claims.

## FAILURE TO ALLEGE PERSONAL PARTICIPATION OF EACH DEFENDANT

The following are named as defendants in this case: The State of Kansas; Kansas Department of Corrections (KDOC); Ray Roberts, Secretary of Corrections (SOC); Jay Shelton, Warden, NCF; Joel Hrabe, Deputy Warden, NCF.  Plaintiff sues defendants in their individual and official capacities.

The State of Kansas and its agencies, including the KDOC, are immune to suit for money damages.  Accordingly, plaintiff's claim for damages against these two defendants is denied.

An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based.  Trujillo v. Williams, 465 F.3d 1210, 1227 (10th Cir. 2006)(A defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established); Mitchell v. Maynard, 80 F.3d 1433, 1441 (10th Cir. 1996); Olson v. Stotts, 9 F.3d 1475, 1477 (10th Cir. 1993)(affirming district court's dismissal where "plaintiff failed to allege personal participation of the defendants").  A supervisor's liability may not be predicated solely upon a theory of respondeat superior.  Rizzo v. Goode, 423 U.S. 362, 371 (1976); Gagan v. Norton, 35 F.3d 1473, 1476 FN4 (10th Cir. 1994), cert. denied, 513 U.S. 1183 (1995).  Instead, to be held liable under § 1983, a supervisor must have personally participated or

acquiesced in the complained-of constitutional deprivation. <u>Meade v. Grubbs</u>, 841 F.2d 1512, 1528 (10th Cir. 1988). The supervisor's "role must be more than one of abstract authority over individuals who actually committed a constitutional violation." <u>Fogarty v. Gallegos</u>, 523 F.3d 1147, 1162 (10th Cir. 2008). As the U.S. Supreme Court recently explained in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S.Ct. 1937, 1948 (2009):

> Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior. (Citations omitted). Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

<u>Id.</u>

Plaintiff's theory of liability for all but one of the named defendants appears to be supervisory capacity. He claims that defendants State of Kansas and KDOC "failed to supervise or properly train" defendants Roberts, Shelton and Hrabe; that Roberts failed to supervise or properly train Shelton and Hrabe; that Shelton failed to supervise or properly train Hrabe; and that through these failures the supervisory defendants "permitted" others to commit the complained-of acts. He also alleges that each supervisor directly participated because they "learned of the violation" by his complaints to them, yet failed to "take any action to fix or resolve the matter." In addition, he claims that the defendant supervisors were negligent.

Plaintiff's allegations of failure to supervise are nothing more than conclusory statements. He alleges no facts indicating that defendant KDOC, State of Kansas, Roberts, or Sheldon directly participated in any of the allegedly unconstitutional acts described

in his complaint.  His bald statement that the defendant supervisors "created the policies and customs" is not sufficient.  He fails to describe any particular policy, state that it was established by a named defendant, describe the circumstances of its application to him, and explain how it affected him in an unconstitutional manner. Nor can plaintiff validly base his claims against the supervisory defendants upon their decisions on administrative appeal of grievances regarding acts or inactions previously taken by other individuals.  In sum, plaintiff's bald allegations against the supervisory defendants fail to state a claim.

Plaintiff's allegations of negligence are also conclusory. Moreover, negligence on the part a prison official does not state a federal constitutional claim and is therefore not a basis for relief under § 1983.

The court concludes that plaintiff has failed to allege facts establishing the personal participation of the defendants who are sued based upon their supervisory capacity.  Mr. Matson is required to allege additional, sufficient facts in his Amended Complaint to show the personal participation of each of these defendants.  If he fails to do so within the time allotted, this action will be dismissed as against those defendants without further notice.


**<u>IMPROPER JOINDER OF CLAIMS</u>**

Plaintiff has improperly joined claims in his complaint.  FRCP Rule 20(a)(2) governs permissive joinder of defendants and pertinently provides:

> (2) Defendants.  Persons . . . may be joined in one action
> as defendants if: (A) any right to relief is asserted
> against them jointly, severally, or in the alternative

> with respect to or arising out of the same transaction,
> occurrence, or series of transactions or occurrences; and
> (B) any question of law or fact common to all defendants
> will arise in the action.

<u>Id</u>.  FRCP Rule 18(a) governs joinder of claims and pertinently
provides: "A party asserting a claim . . . may join, as independent
or alternative claims, as many claims as it has against an opposing
party."    While joinder is encouraged for purposes of judicial
economy, the "Federal Rules do not contemplate joinder of different
actions against different parties which present entirely different
factual and legal issues." <u>Zhu v. Countrywide Realty Co., Inc.</u>, 160
F.Supp.2d 1210, 1225 (D.Kan. 2001)(citation omitted).

The Court of Appeals for the Seventh Circuit held in <u>George v.
Smith</u>, 507 F.3d 605, 607 (7th Cir. 2007), that under "the controlling
principle" in FRCP Rule 18(a), "[u]nrelated claims against different
defendants belong in different suits."    Requiring adherence in
prisoner suits to the federal rules regarding joinder of parties and
claims prevents "the sort of morass [a multiple claim, multiple
defendant] suit produce[s]."  <u>Id.</u>  It also prevents prisoners from
"dodging" the fee obligations[1] and the three strikes provisions[2] of
the Prison Litigation Reform Act.  <u>Id.</u> (FRCP Rule 18(a) ensures

---

[1]    28 U.S.C. § 1915(b)(1) and (2) pertinently provide: "[I]f a prisoner
brings a civil action or files an appeal in forma pauperis, the prisoner shall be
required to pay the full amount of a filing fee."  To that end, the court "shall
assess" an initial partial filing fee, when funds exist, and after payment of the
initial fee, the prisoner "shall be required to make monthly payments of 20
percent of the preceding month's income credited to the prisoner's account." <u>Id</u>.

[2]    28 U.S.C. § 1915(g) provides:  In no event shall a prisoner bring a
civil action or appeal a judgment in a civil action or proceeding under this
section if the prisoner has, on 3 or more prior occasions, while incarcerated or
detained in any facility, brought an action or appeal in a court of the United
States that was dismissed on the grounds that it is frivolous, malicious, or fails
to state a claim upon which relief may be granted, unless the prisoner is under
imminent danger of serious physical injury.

"that prisoners pay the required filing fees--for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees."). Under Rule 18(a), "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." Id.

Plaintiff raises a hodgepodge of claims against a variety of defendants, which do not appear to have arisen from the same set of transactions. These unrelated claims cannot all be joined in a single civil action. Plaintiff is not precluded from litigating any improperly-joined claim, but is simply required to do so in a separate civil action.

It is not for this court to decide which claims plaintiff will include in his Amended Complaint. He is required to adhere to this Order in deciding which claims he will continue to pursue in this case, and then omit any other claims that are not properly joined. If he does not comply, the court will dismiss claims that it finds to be improperly joined with the main counts in his Amended Complaint.

## STRIP SEARCH CLAIM

Plaintiff claims that he was subjected to an illegal strip search. In support of this claim, he alleges as follows. On two days in October 2010, at the El Dorado Correctional Facility, El Dorado, Kansas (EDCF), inmates who visited their families were "strip searched in front of high definition digital cameras," which both displayed live footage and recorded it. Following a visit with his father during that time, Mr. Matson was ordered to undress in

front of the cameras and perform several routine search acts while nude.  Plaintiff was thus exposed to "others not involved in the strip search."  He "did not waive his rights."

Plaintiff submitted a Personal Injury Claim Form and filed a "formal grievance over the cameras."  The "Warden's office" ordered "destruction of the video evidence," issued "a false statement that the cameras were never operational," and advised that the proper remedy was a claim with the Joint Legislative Committee.  Plaintiff filed such a claim, and the investigation concluded that his claims were true.  However, on September 15, 2011, the committee dismissed his claim without prejudice "wanting the plaintiff to access the court and use their remedy as a last resort."  Plaintiff asserts that this incident violated K.S.A. 22-2521(b) and KDOC-IMPP 12-103.

This claim is subject to dismissal for several reasons.  First, violations of a state statute and a state regulation do not amount to federal constitutional violations, and thus fail to state a claim for relief in federal court under 42 U.S.C. § 1983.  Second, plaintiff does not allege facts, such as dates and names to establish frequent viewing by females, so as to state a violation of his Fourth Amendment right to privacy, which may be significantly curtailed in prison for security reasons.  Hudson v. Palmer, 468 U.S. 517, 527-28 (1984)("A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order.).

Third, plaintiff does not allege facts indicating that any named defendant actually participated in the search-taping incident. This incident, by his own account, occurred at the EDCF, and none of

the defendants named in this action are EDCF employees.  It should be clear from the discussion earlier herein that plaintiff may properly sue only the person or persons that caused him to be strip-searched in an allegedly unconstitutional manner.

Furthermore, plaintiff may not join claims regarding events that occurred at the EDCF with claims regarding unrelated events that occurred at the NCF.  Mr. Matson is required to allege sufficient, additional facts in his Amended Complaint to cure these deficiencies within the time allotted, or this claim may be dismissed without further notice for failure to state a constitutional claim, lack of personal participation,  and improper joinder.

## DENIAL OF ACCESS CLAIM

Plaintiff claims that his right of access to the courts has been violated.  In support of this claim, he alleges as follows. Plaintiff initiated a civil lawsuit in a state district court.[3]  In connection with that lawsuit he made requests for withdrawal of funds from his "Forced Savings" account.  "The defendants" approved his initial requests for withdrawal to pay the filing fee, but denied his requests for withdrawal to pay service of summons fees and for copies of his complaint.  Defendant Deputy Warden Hrabe exercised "unauthorized control over" his requests.  Plaintiff had to file in forma pauperis and explain the delay of funds to the

---

[3]     Plaintiff indicates that on December 18, 2010, he filed a Writ of Mandamus in the Kansas Supreme Court claiming "fraudulent misappropriation of Inmate Benefit Funds" in the amount of $6,000,000.00.  He sought an injunction protecting him from defendants "chilling" his actions and retaliating against him for filing the mandamus.  His petition was denied by the Kansas Supreme Court "leaving him to file a civil suit in the district court" for the misappropriation.

state court.   Mr. Matson appears to claim that defendant Hrabe thereby obstructed his communication with the court clerk and delayed this filing by 21 days.

Plaintiff's claim that the denial of his withdrawal requests interfered with his access to the state court is belied by his own allegation that his state case was merely delayed 20 days and he was allowed to proceed.   In order to state a claim of unconstitutional denial of court access, a plaintiff must show actual injury.   That is, he must allege facts showing that he had a non-frivolous case actually dismissed or substantially impeded.   Plaintiff's allegations, taken as true, do not show actual injury.

To the extent plaintiff is claiming that Hrabe's taking possession of his withdrawal requests violated either a state statute or an IMPP, no federal constitutional violation is stated, because violations of state law or regulations are not grounds for relief under § 1983.

Plaintiff's claims regarding access to his state court action do not appear to be properly joined with any of the other claims he raises in this complaint, except the next two that also allege the involvement of defendant Hrabe.   He must decide which claim or claims he will proceed upon, and then omit any other claims that are improperly joined.

The court notes that plaintiff makes no argument and provides no authority for his assertion that the Forced Savings account is an illegal misappropriation of inmate funds.   He may have made those arguments in state court, but he has not presented them to this court.   This allegation appears to be nothing more than part of the background statement for his access claim.   For this reason, it is

not considered as a claim before this court.

Plaintiff also claims that defendants have wrongfully promulgated or interpreted the IMPP governing Forced Savings to disallow spending on legal copies and service of summons fees as well as a regulation to require fees for copies. These claims on their face involve matters of state law that are not cognizable under § 1983. Plaintiff has not alleged facts showing any actual injury to a non-frivolous lawsuit that has resulted from this state policy or regulation, and thus these allegations fail to support his claim of denial of access.

**DEPRIVATION OF PROPERTY CLAIM**

Plaintiff claims unlawful deprivation of property. In support, of this claim he alleges as follows. On July 13, 2011, defendant Hrabe retained plaintiff's envelope with a 44-cent stamp. Plaintiff filed a grievance and property claim against Hrabe to retrieve this property. On August 4, 2011, defendant Hrabe responded to the grievance. Hrabe's handling of this grievance was a violation of K.A.R. 44-15-101(a), which provided that the "employee who appears to be involved in the matter shall not participate in any capacity in the resolution of the grievance." Hrabe responded that he had searched for the property without success and had no reason to retain it. Plaintiff appealed to the Warden. On August 22, 2011, he was called to the Unit Team's office and given the stamped envelope along with his withdrawal requests. He was asked to drop the property claim and grievance, but he declined. A copy of plaintiff's grievance that had been forwarded to the SOC was returned; and only then, on September 16, 2011, was processed and

answered by the Warden.

To the extent plaintiff is claiming that Hrabe's response to his grievance violated either a state statute or an IMPP, the court reiterates that violations of state laws or regulations are not grounds for relief under § 1983.

Moreover, even accepting the facts alleged in support of plaintiff's property deprivation claim as true, they fail to state a claim of federal constitutional magnitude. First, the temporary loss of a 44-cent stamped envelope is de minimus, and utterly fails to present a federal constitutional violation. Second, a claim of deprivation of property without due process is not grounds for relief under § 1983, where as here, plaintiff had an available administrative remedy for property claims as well as a cause of action in state court for loss of personal property.

Finally, this claim does not appear to be related to claims that did not involve defendant Hrabe, and is thus improperly joined with any such claim.


**HARASSMENT AND RETALIATION CLAIMS**

Plaintiff claims that defendants have retaliated against and harrassed him for engaging in constitutionally protected activities of filing grievances and seeking redress in court. In support of these claims, he alleges the following. On September 1, 2011, plaintiff was subjected to a property inspection and audit of his cell by two correctional officers at Hrabe's request. On September 14, 2011, plaintiff filed a "property claim" based on defendant Hrabe's conduct regarding the withdrawal requests. That same day a correctional officer entered his cell and stated, "Deputy Warden

Hrabe sent me to audit your property and do a cell search." Later that day a unit team member and the correctional officer returned and went through his property again at Hrabe's instruction. On September 15, 2011, plaintiff submitted a grievance "on the retaliatory act" of Hrabe abusing his authority by ordering subordinates to conduct harassing acts against plaintiff for engaging in protected activity.[4] Plaintiff was removed from his single-man, "spacious room" with a walk-in closet that can only be occupied by Incentive Level 3 inmates; and transferred to the "intake and disciplinary cellhouse 'C'," which houses mainly Incentive Level 1 inmates, new inmates, and inmates in disciplinary trouble. He claims that he was moved to a cell with unconstitutional conditions to chill his constitutional activities and inflict hardship and harassment upon him.

Plaintiff claims other acts were retaliatory as follows. On January 20, 2011, he was placed in administrative segregation (ad seg) "under a fabricated investigation." On March 28, 2011, he was transferred to NCF, which separated him from his family in violation of IMP 11-103. It also "obstruct[ed] his access to the courts" because his wages or other funds used for legal copies and fees have been cut off, and he has been removed "from his word processor database," which is not available at NCF. Two other facilities were

---

[4]    Plaintiff alleges that on this same date, defendant Hrabe was contacted by "the Management Office's Public Information Officer" and instructed to "provide the plaintiff with the records he had requested under the Kansas Open Records Act," which had been denied; but that Hrabe continues to refuse to allow plaintiff to view the records. Plaintiff seeks no relief with regard to these allegations, and does not describe the records or other relevant circumstances. For these reasons, this is not considered a claim in this action.

closer to his family,[5] had private industry jobs available, and could have provided access to his word processor database. He made two requests for transfer at the NCF that were denied, even though he "meets all the criteria" on transfers in IMPP 11-103. Plaintiff claims that he was sent to NCF to punish him and to chill his efforts to access the courts.

Mr. Matson seeks transfer to a facility closer to his family. He also seeks an injunction to stop all retaliatory acts against him including but not limited to interstate transfers, cell searches for harassment, false investigations causing placement in ad seg, and false disciplinary reports by planting items in an inmate's cell.

Plaintiff's allegations that his intraprison and interstate transfers were contrary to two IMPPs, one providing that "[n]o adverse action shall be taken against any inmate for use of the grievance procedure" and another prohibiting cell searches for harassment purposes, are matters of state law that are not cognizable under § 1983. He does not state a claim that any transfer resulted in a denial of court access, if that was his intent, because he shows no actual injury. Moreover, plaintiff has no federal constitutional right to be assigned any particular incentive level or to remain at any particular prison. Nor is he constitutionally entitled to be confined in a prison that provides access to industry jobs or word processing equipment.

In addition, these claims are subject to being dismissed because plaintiff does not allege sufficient facts to establish the

---

[5]    Plaintiff's bald statement that his transfer away from his family violated his right to equal protection is not supported by any facts that establish the requisite elements of this constitutional claim.

elements of a retaliation claim.  His own exhibits indicate to the contrary that regular cell searches were conducted with the same frequency as that complained of in his grievance.  In short, he alleges no facts to establish that these events would not have occurred "but for" a retaliatory motive on the part of the person that actually ordered either of his transfers.

These claims are also subject to being dismissed as against all defendants other than Hrabe because plaintiff does not allege facts showing the personal participation of any named defendant other than Hrabe in any described acts.  He alleges no facts showing that Hrabe personally participated in any transfer decision.

Plaintiff's references to false investigations and false disciplinary reports are nothing more than bald statements.  If he has been found guilty of a disciplinary infraction, he may not seek damages or other relief based upon its alleged falsity unless and until he has had the disciplinary decision overturned.

Finally, the court finds no indication in the complaint that plaintiff's claims regarding cell searches and transfers are properly joined with the other claims, except those also involving Hrabe.


**CENSORSHIP CLAIM**

Plaintiff claims that he has been subjected to unconstitutional censorship.  In support of this claim he alleges as follows.  In August, 2011, he discovered that the "Facility Mail room" had blocked an e-mail from "Kansas Voices" and his inquiry back to them. Kansas Voices had sent an introductory e-mail about their website on

which offenders can put certain complaints regarding their incarceration. He would never have known of this e-mail "seizure" had a new e-mail address not shown up on his list. He asked his Unit Team why these e-mail communications were being blocked, and was informed that the material was being reviewed. On August 30, he still had not received the blocked e-mail and filed a formal grievance. The Unit Team responded to the grievance that the material was still under review. He appealed to the Warden and to the SOC without success. He claims that "the defendants" had an improper motive in keeping this e-mail from him due to its content. He seeks an injunction requiring that notice be provided to inmates when mail is seized for review, and that the time for review be limited to 72 hours.

Accepting plaintiff's allegations and his own exhibits as true, the court finds that this claim does not amount to a federal constitutional violation. The rationale for and the duration of the delay in plaintiff's receipt of this e-mail and the fact that it was not censored but temporarily withheld for review during the normal course are set forth in his exhibits. It is well-settled that prison officials have the authority to screen an inmate's incoming mail. Plaintiff's allegation of improper motive is completely conclusory.

Furthermore, plaintiff does not allege that any named defendant personally participated in the actual withholding of this e-mail.

Finally, this claim also appears to be improperly joined with every other claim raised herein.

**OTHER FIRST AMENDMENT CLAIMS**

Plaintiff claims that his rights under the First Amendment were violated by other acts.  In support, he mainly refers to his allegations that at NCF his mother was removed from his telephone contact list for over two months except for Mother's Day weekend.

This claim is subject to being dismissed because the facts alleged are not sufficient to state a federal constitutional violation.  Plaintiff does not allege that he had no other means of communicating with his mother or his family.  In addition, his allegations that after several complaints her number was returned to his list indicate the matter was resolved administratively.

Moreover, plaintiff does not allege facts showing that any named defendant was the person who actually removed his mother's name from his telephone list.  It also appears that this claim is not properly joined with others in the complaint.

**EIGHTH AMENDMENT CLAIMS**

Plaintiff claims that he has been subjected to cruel and unusual punishment.  In support of this claim he alleges as follows.  Conditions in the two-man cells in his housing unit do not "meet American Correctional Association Standards" with regard to space and time in the cells.  In particular, he alleges that inmates are "locked down up to 22 hours a day;" a light is on continuously near his head resulting in sleep deprivation; video cameras allow "select employees" including females to view inmates showering; the roof leaks; inmates are quarantined in the unit with staph infections that are treated as spider bites and thus never properly reported;

the water contains high levels of arsenic, lead and other contaminants; and the broken ventilation system pumps outside air having a temperature of 110 degrees in the summer indoors.

Plaintiff seeks damages and a declaration that his constitutional rights have been violated. He also requests an injunction requiring removal of digital cameras so he cannot be viewed in the shower, the installation of water treatment systems, "to single the cells" in "C" cellhouse, and removal of the night lights or repositioning of bunks away from the lights.

Plaintiff's claims of cruel and unusual conditions are subject to dismissal because he has not provided dates to show the duration of any of these generally-alleged conditions. Moreover, he seeks no relief based on the alleged failure to properly treat staph infections, and alleges no facts describing his personal exposure to or injury from many of the alleged conditions. Nor does he allege facts indicating that any named defendant caused the conditions of which he complains. In addition, these claims are not properly joined with other claims in the complaint.

Plaintiff is given time to cure the deficiencies discussed above by filing a complete Amended Complaint upon forms provided by the court upon which he has written the case number of this case. If plaintiff fails to comply with any of the orders and directions of the court herein within the time allotted, this action may be dismissed without further notice.

**IT IS THEREFORE BY THE COURT ORDERED** that plaintiff is required to satisfy the filing fee herein by either submitting the remainder of the filing fee, which is $50.00; or the certified statement of

his inmate account for the appropriate six-month period to support his pending motion to proceed WPF.

**IT IS FURTHER ORDERED** that plaintiff is given thirty (30) days in which to file a complete Amended Complaint upon forms provided by the court that either cures the deficiencies discussed herein or omits the improperly joined or otherwise deficient claims.

The clerk is directed to send plaintiff § 1983 forms.

**IT IS SO ORDERED.**

Dated this 5th day of January, 2012, at Topeka, Kansas.

s/Sam A. Crow
U. S. Senior District Judge