IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MIKE C. MATSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 11-3192-RDR |
| | ) |
| JOEL HRABE, | ) |
| | ) |
| Defendant. | ) |

**MEMORADUM AND ORDER**

This matter comes before the Court upon Defendant Joel Hrabe's Motion for Protective Order (ECF No. 74) and Plaintiff Mike Matson's Motion for Oral Argument on Mr. Hrabe's Motion for Protective Order (ECF No. 81). The parties have fully briefed Mr. Hrabe's Motion, and the Court finds that oral argument will not materially aid in its resolution. Therefore, the Court denies Mr. Matson's Motion for Oral Argument. Based upon the following reasons, the Court grants Mr. Hrabe's Motion for Protective Order.

   I.   **Relevant Background**

Mr. Matson, proceeding *pro se*, is currently an inmate at the Ellsworth Correctional Facility. On November 10, 2011, Mr. Matson brought a civil action pursuant to 42 U.S.C. § 1983, alleging that Mr. Hrabe, a deputy warden at the Norton Correctional Facility ("NCF"), violated his constitutional rights by impeding upon his access to the courts and by retaliating against him for exercising his constitutional rights while in custody at NCF. On January 9, 2013, the court dismissed Mr. Matson's access-to-the-courts claim in its entirety and dismissed, in part, his retaliation claim. Mr. Matson's claim as it pertains to Mr. Hrabe's alleged illegal retaliation for transferring him to a different cell was permitted to go forward.

The court has subsequently conducted a scheduling conference and Mr. Matson has served discovery requests upon Mr. Hrabe. Mr. Hrabe contends that the discovery requested includes documents and information of a confidential nature that would jeopardize institutional security. As a result, the parties tried to come to an agreement on a protective order in this case. However, the parties have come to an impasse on a number of provisions. Specifically, the parties disagree on the following two issues: 1) providing Mr. Matson with copies of all discoverable documents containing confidential information, and 2) allowing Mr. Matson to inspect copies of documents containing confidential information before such information is redacted.[1] Each party has submitted a separate proposed protective order for the Court's review.

**II.     Discussion**

Pursuant to Fed. R. Civ. P. 26(c), a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" The decision to enter a protective order is within the court's discretion.[2] In fact, the Supreme Court recognizes that "[t]he trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery. The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders."[3] Despite this broad discretion, "a protective order is only warranted when the movant demonstrates that protection is necessary under a specific category set out in Rule 26(c)."[4] In addition, the party seeking a

---

[1] *See* Pl.'s Mem. in Opp'n to Def.'s Mot. for Protective Order, at 3, ECF No. 77; Def.'s Mem. in Supp. of Mot. for Protective Order, at 4-7, ECF No. 75.

[2] *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 482 (10th Cir. 1995).

[3] *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (10th Cir. 1984) (internal citations omitted).

[4] *Herrera v. Easygates, LLC*, No. 11-CV-2558-EFM-GLR, 2012 WL 5289663, at *2 (D. Kan. Oct. 23, 2012) (citing *Aikins v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 534 (D. Kan. 2003)).

protective order bears the burden of establishing good cause.[5] To do this, the movant must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."[6] Regardless of whether the parties agree to certain provisions or not, the Court must determine whether good cause is shown for the entire protective order, not just those in dispute.[7]

In this case, the parties seek a blanket protective order over confidential information. As explained by Magistrate Judge David J. Waxse,

> A blanket protective order places upon the parties the initial burden of determining and defining what information is entitled to protection. Typically, a blanket protective order requires counsel for a producing party to review the information to be disclosed and designate the information counsel believes, in good faith, is confidential or otherwise entitled to protection. The designated information is then protected from certain uses and disclosure under the terms of the protective order, unless the designation is objected to by an opposing party. If the parties are unable to resolve their dispute regarding the designation, the court may review the designation and determine whether the designated information should be protected. The terms of a blanket protective order, like the terms of the two other types of protective orders, must be approved by the court, since a protective order is, by definition, an order of the court and not merely a stipulation or agreement of the parties.[8]

"The agreement of all parties is not required to enter a blanket protective order as long as the party seeking protection makes some threshold showing of good cause to believe that

---

[5] *Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 244 (D. Kan. 2010).

[6] *Aikins*, 217 F.R.D. at 534 (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, n.16 (1981)).

[7] *Univ. of Kansas Ctr. for Research, Inc.* v. *United States*, No. 08-2565-JAR-DJW, 2010 WL 571824, at *4 (D. Kan. Feb. 12, 2010).

[8] *Id.* (internal citations omitted).

discovery will involve confidential or protected information."[9] To meet this burden, the party may establish good cause on a generalized basis as opposed to a document-by-document basis.[10]

With these standards in mind, the Court will address both the agreed upon and the disputed terms of the proposed protective orders.

### A. Existence of Good Cause to Enter a Protective Order

Before turning to the disputed provisions, the Court must initially determine whether good cause exists to enter a blanket protective order restricting information from use outside of this litigation pertaining to what the parties agree, in most respects, to be confidential. After review of the parties' proposed protective orders and the briefing on this matter, the court finds that the parties have sufficiently demonstrated good cause for an entry of a blanket protective order. The Court now turns to the particular provisions in dispute.

### B. Providing Mr. Matson with Copies of Discoverable Documents Containing Confidential Information

Mr. Hrabe's proposed protective order limits Mr. Matson from using or disclosing confidential information, specifically to other inmates, for any purpose outside of this lawsuit. Further, Mr. Hrabe's proposed protective order allows, consistent with facility procedures, for Mr. Matson to have reasonable access and time to read and review the confidential information in a secure setting. Mr. Matson, however, would not be allowed to make or retain copies of the confidential information unless allowed by Mr. Hrabe or upon court order.

"Confidential Matter" as described in Mr. Hrabe's proposed protective order includes:

> information pertaining to the security operations of the Kansas Department of Corrections ("KDOC") correctional facilities, personnel records, personal contact information of KDOC current and former employees, documents containing private information

---

[9] *Bartholomees v. Signator Investors, Inc.*, No. 03-2081-GTV, 2003 WL 22843174, at *1 (D. Kan. Nov. 25, 2003).

[10] *Id.*

4

> about inmates, and information that discloses confidential sources
> or intelligence gathering methods that may be produced during
> discovery in this action.[11]

Mr. Matson agrees with this definition except for the inclusion of "information that discloses confidential sources."[12] He asserts that this portion may pertain to complaints filed by inmates against staff.[13] He claims to have a First Amendment right to disseminate such information because it relates to Mr. Hrabe's alleged misconduct, abuse of power, and other constitutional concerns.[14] However, Mr. Hrabe argues that the information he seeks to keep confidential includes:

> information about housing assignments of other inmates, daily
> notes maintained by correctional officers, unit team managers, and
> unit team counselors regarding day-to-day operations of the facility
> and rehabilitation of inmates, internal e-mails sent and received by
> prison staff concerning the operation of facilities at NCF, prison
> staff personal contact information, and inmate[, including Mr.
> Matson's,] mental health records.[15]

Mr. Hrabe contends that allowing Mr. Matson to retain a copy of such confidential information could jeopardize the safety and rehabilitation of inmates at NCF; could open the facility to the risk of security breaches; and could expose any potential weaknesses of staff members, other inmates, and Mr. Matson himself. Mr. Matson argues that he would be prejudiced by not being allowed to copy such confidential material because it would impose a hardship that may "impede, hinder and frustrate Plaintiff's ability to, in good faith, obtain his discoverable material which he needs to prove his claims." Mr. Matson also wants to receive a

---

[11] Def.'s Proposed Protective Order, at 2, ECF No. 74-1.

[12] Pl.'s Mem. in Opp'n to Def.'s Mot. for Protective Order, at 7-8, ECF No. 77.

[13] *Id.*

[14] *Id.*

[15] Def.'s Mem. in Supp. of Mot. for Protective Order, at 4, ECF No. 75.

copy of his mental health records, even though KDOC has a policy against inmates viewing their own health records without a member of the clinical staff present.[16]

As explained by the Supreme Court, "[t]he difficulties of operating a detention center must not be underestimated by the courts."[17] "[T]he problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions."[18] "Maintaining safety and order at these institutions requires the expertise of correctional officials, who must have substantial discretion to devise reasonable solutions to the problems they face."[19] Consequently, the Supreme Court has confirmed the importance of this deference to be given to correctional officials.[20]

The Court shares Mr. Hrabe's concern that the confidential information sought by Mr. Matson may lead to institutional security issues, as described above, even though Mr. Matson is now housed at a different facility. In addition, Mr. Matson will be provided ample opportunity to review these documents and use them to prosecute his claim. Namely, he will be provided reasonable access to the confidential documents in a secured setting. He may include the confidential information in any affidavit, briefs, memoranda, or other paper filings made with the court after either agreement of Mr. Hrabe or upon court order. He also may disclose this confidential information to others outside of this litigation but only after either agreement by Mr.

---

[16] Kansas Department of Corrections, *Internal Management Policy and Procedure § 05-101*, at 5, http://www.doc.ks.gov/kdoc-policies/AdultIMPP/chapter-5/05101.pdf.

[17] *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 132 S. Ct. 1510, 1515 (2012) (citing *Turner v. Safley*, 482 U.S. 78, 84-85 (1987)).

[18] *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).

[19] *Florence*, 132 S. Ct. at 1515 (citing *Turner*, 482 U.S. at 89).

[20] *Id.*

Hrabe or upon a court order—a provision routinely included in blanket protective orders previously granted by this Court.

Turning to Mr. Matson's request to receive a copy of his mental health records, Mr. Matson does not argue with the policy in place. Rather, he argues that because KDOC allows for the release of such medical records to an inmate's attorney, he should be allowed to receive a copy of such records because he is acting as his own attorney.[21] The Court, however, gives deference to the established policy regarding inmate access to their records. This provision states:

> A. An inmate or former inmate shall have limited access to his/her own records as follows:
> . . .
>> 2. May schedule an appointment with a member of the clinical staff to discuss the contents of a medical record, clinical evaluation and/or treatment record prepared by a clinical staff member.
>>
>>> a. The inmate or former inmate shall not be furnished a copy.[22]

This provision clearly states that an inmate will not be furnished a copy of his own medical records. However, the inmate is allowed to discuss its content with a member of the clinical staff. Nonetheless, Mr. Matson directs the court to an Authorization for Release of Health Information as part of KDOC's Internal Management Policy and Procedures, which allows an inmate to release his or her personal health information to an attorney. After review of this authorization, nowhere does it state that an inmate can be provided a copy of such records. Therefore, the court gives deference to the explicit language that an inmate shall not be furnished

---

[21] Kansas Department of Corrections, *Internal Management Policy and Procedure § 05-107*, at Attachment A, http://www.doc.ks.gov/kdoc-policies/AdultIMPP/chapter-5/05107.pdf.

[22] Kansas Department of Corrections, *Internal Management Policy and Procedure § 05-101*, at 5, http://www.doc.ks.gov/kdoc-policies/AdultIMPP/chapter-5/05101.pdf.

a copy of his own records. If Mr. Matson finds it necessary to receive a copy of his mental health records after reviewing the material with a clinical staff member, Mr. Hrabe's proposed protective order provides for a way to accomplish this (i.e. by agreement between the parties or by court order).

Finally, the Court turns to Mr. Matson's argument that he has a First Amendment right to disseminate any information pertaining to Mr. Hrabe's alleged misconduct, abuse of power, and violations of constitutional rights. After review of Mr. Hrabe's proposed protective order, the Court finds that such information is not restricted on its face. Nonetheless, if Mr. Matson believes he has a right to disseminate certain information covered under Mr. Hrabe's proposed protective order, he can seek permission from Mr. Hrabe or, upon the proper motion, seek a court order.

The Court notes, however, "that an order prohibiting dissemination of discovered information before trial is not the kind of classic prior restraint that requires exacting First Amendment scrutiny."[23] In fact, discovery is a product of legislative grace in which a "litigant has no First Amendment right of access to information made available only for purposes of trying his suit."[24] "In sum, judicial limitations on a party's ability to disseminate information discovered in advance of trial implicates the First Amendment rights of the restricted party to a far lesser extent than would restraints on dissemination of information in a different context."[25] As held by the Supreme Court, when "a protective order is entered on a showing of good cause as required by Rule 26(c), is limited to the context of pretrial civil discovery, and does not

---

[23] *Seattle Times Co.*, 467 U.S. at 33.

[24] *Id.* at 32.

[25] *Id.* at 34.

restrict the dissemination of the information if gained from other sources, it does not offend the First Amendment."[26]

Based upon the foregoing analysis, the Court finds that good cause exists to enter Mr. Hrabe's proposed protective order as it pertains to Mr. Matson's retention of copies of the "Confidential Matter" described therein.

### C. Allowing Mr. Matson to Inspect Copies of Documents Containing Confidential Information Before Such Information is Redacted

As part of Mr. Hrabe's proposed protective order, he seeks to include a provision that would redact confidential matter "to protect sensitive information that is legally irrelevant."[27] Specifically, Mr. Hrabe states that the information he seeks to redact relates to other inmates and their designated housing assignments, which he asserts is legally irrelevant to the remaining claim. Mr. Hrabe argues that allowing Mr. Matson to view this information prior to it being redacted places this information at risk of dissemination throughout the inmate population. In turn, that information could jeopardize institutional safety and pose a security risk for other inmates by exposing their potential weaknesses or placement with other inmates. Mr. Matson does not argue with the necessity of redacting this information but wants to inspect copies of the documents before the information is redacted.

The Court agrees that information relating to other inmates and their housing assignments could potentially create security concerns—a point of which Mr. Matson does not argue against. In fact, "[p]rison officials have a duty . . . to protect prisoners from violence at the hands of other

---

[26] *Id.* at 37.

[27] Def.'s Proposed Protective Order, at 2, ECF No. 74-1.

prisoners."[28] Information released to Mr. Matson, despite his purported good prison behavior and his relocation to the Ellsworth Correctional Facility, could thwart prison officials' goal to maintain institutional security and prevent violence amongst prisoners. In addition, Mr. Hrabe's proposed protective order includes a provision to request, upon the proper motion, an in camera review by the court regarding redaction disputes. Therefore, because Mr. Matson is provided an opportunity to dispute redacted information and given that courts should defer to correctional officials' concerns for safety, the Court finds that good cause exists to enter Mr. Hrabe's proposed provision of his protective order as it pertains to redacted material.

The Court will enter, in most respects, Mr. Hrabe's proposed protective order in conformity to this District's guidelines for protective orders.

Accordingly,

**IT IS THEREFORE ORDERED** that Defendant Joel Hrabe's Motion for Protective Order (ECF No. 74) is hereby granted. The Court also denies Plaintiff Mike Matson's Motion for Oral Argument on Mr. Hrabe's Motion for Protective Order (ECF No. 81)

**IT IS FURTHER ORDERED** that the Court will enter, in most respects, Mr. Hrabe's protective order consistent with this Memorandum and Order and this District's guidelines in a separate filing.

**IT IS SO ORDERED.**

Dated this 20th day of August, 2013, at Topeka, Kansas.

> s/ K. Gary Sebelius
> K. Gary Sebelius
> U.S. Magistrate Judge

---

[28] *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)).