## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

MIKE C. MATSON,                    )
                                   )
            Plaintiff,             )
                                   )
      v.                           )    Case No. 11-3192-RDR
                                   )
JOEL HRABE,                        )
                                   )
            Defendant.             )
_____  _

## MEMORANDUM AND ORDER

Plaintiff is a state system inmate who has brought a pro se
civil rights action pursuant to 42 U.S.C. § 1983 alleging
illegal retaliation.  Plaintiff has also alleged a supplemental
state law claim.  Defendant was a deputy warden at the Norton
Correctional Facility (NCF) during the relevant times in this
case.  Currently pending before the court are defendant's motion
for summary judgment and plaintiff's motion to file a second
amended complaint.  For various reasons, including undue delay
and futility, the court shall deny plaintiff's motion to file a
second amended complaint.  The court shall grant defendant's
motion for summary judgment because plaintiff cannot demonstrate
the denial of a constitutional right or that the alleged
retaliatory acts were clearly established to be unconstitutional
at the time they were committed.  Before discussing these

holdings in greater detail, the court shall address some related pending motions.

I.  RELATED PENDING MOTIONS

Plaintiff's motion for leave to supplement exhibits in support of his response to defendant's motion for summary judgment (Doc. No. 203) shall be granted. Plaintiff's motion for in camera review of discovery material (Doc. No. 213) shall be denied. The court is not convinced that the relief requested by plaintiff will be of material benefit to the court's decision upon the summary judgment motion or other issues in this case. The court shall overrule plaintiff's objections (Doc. No. 198) to a Magistrate Judge's order denying reconsideration of a prior order deciding several motions. The court has reviewed the Magistrate Judge's order and finds that it is neither clearly erroneous nor contrary to law.

II. CASE HISTORY

Plaintiff filed the original complaint on November 10, 2011 and filed an amended complaint on January 10, 2012. The amended complaint alleges a denial of access to the courts and retaliation against the exercise of plaintiff's First Amendment rights to file a grievance as an inmate in the Kansas prison system. A state law negligence claim is also alleged in the amended complaint. A motion to dismiss or for summary judgment was filed on September 20, 2012. The court issued an order

which granted in part and denied in part the motion to dismiss or for summary judgment on January 9, 2013. Doc. No. 53. The court granted judgment against plaintiff's claim of denial of access to the courts. The court allowed plaintiff's retaliation claim to go forward, although the court determined that plaintiff could not prove illegal retaliation solely from the ordering of searches and property audits of plaintiff's cell. The court did not dismiss a claim that plaintiff was transferred to a different cell to retaliate against the exercise of his First Amendment rights. Plaintiff asked the court to alter or amend the January 9, 2013 order. The court denied the motion to alter or amend but permitted plaintiff to argue that defendant engaged in a "campaign" of harassment or retaliation. Doc. No. 65.

III.  PRO SE STANDARDS

The court construes a <u>pro se</u> plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." <u>Whitney v. New Mexico</u>, 113 F.3d 1170, 1173-74 (10th Cir. 1997)(quotations and citations omitted). "[I]f the court can reasonably read the pleadings to state a valid claim . . ., it should do so despite plaintiff's failure to cite proper legal

authority, his confusion of various legal theories . . . or his unfamiliarity with pleading requirements." <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1110 (10th Cir. 1991). But, it is not the "proper function of the district court to assume the role of advocate for the <u>pro se</u> litigant." <u>Id.</u>

## IV. PLAINTIFF'S MOTION TO FILE A SECOND AMENDED COMPLAINT SHALL BE DENIED.

Plaintiff filed a motion for leave to file a second amended complaint on November 18, 2013, two years after the original complaint was filed in this case. The scheduling order in this case set a deadline of October 18, 2013 for motions to amend the pleadings. But, in August or September 2013, plaintiff informed defense counsel of plaintiff's desire to extend the deadline and plaintiff filed a motion seeking a three-month extension. Defense counsel expressed no opposition to a one-month extension, but asked that any extension be limited to the adverse actions or injuries alleged by plaintiff in his amended complaint. Ultimately, the requested extension was considered moot by the Magistrate Judge because this court granted a partial stay of discovery. The discovery deadline in this case was December 6, 2013. Discovery was stayed on November 6, 2013 as to all issues except those relating to qualified immunity. All discovery as to qualified immunity was to be commenced or served in time to be completed by December 6, 2013.

A.  Contents of the proposed second amended complaint and defendant's arguments in opposition

The proposed second amended complaint has five counts. Counts One and Two allege a "campaign" of retaliation against plaintiff's exercise of his First Amendment rights. Count Three alleges the tort of negligent infliction of emotional distress. Count Four alleges interference with plaintiff's access to the court by impeding plaintiff from filing a medical malpractice claim, and Count Five alleges gross negligence and willful misconduct by intercepting, opening and tampering with plaintiff's outgoing legal and official mail in violation of State of Kansas regulations and 18 U.S.C. §§ 1701 and 1702.

The proposed second amended complaint includes the following allegations which are not contained in the amended complaint:

- – that plaintiff was transferred from a single cell in A-Unit to C-Unit which was a multi-occupancy disciplinary and segregation unit, contrary to his mental health restrictions, with more hostile inmates and more restrictions;

- – that the stress of living in C-Unit aggravated plaintiff's GERD condition and caused acid reflux and asthma attacks;

- – that plaintiff was harassed by other inmates in C-Unit who stole from plaintiff and threatened him in order to coerce plaintiff into purchasing items which plaintiff was allowed to purchase but other inmates could not;

- – that he had an intense light shining in his cell in C-Unit 24-hours a day which caused him to lose sleep;

- – that the roof leaked in C-Unit which caused an electrical hazard;

- – that cameras were installed in the shower areas of C-Unit and that female staff could watch plaintiff in the shower;

- – that during cell searches conducted in C-Unit plaintiff lost a hot pot, an alarm clock and a fan;

- – that the C-Unit cell had less living space than the A-Unit cell and less than 25 square feet per inmate;

- – that staff seized plaintiff's mail and refused to process grievances necessary as a precondition for bringing a court action;

- – that plaintiff was forced to agree to not file further grievances or property claims in order to move from his cell in C-Unit to other C-Unit housing.

Defendant opposes the motion to amend on the grounds that: the proposed second amended complaint has been unduly delayed; the proposed amendments raise new factual allegations which will require more discovery; the second amended complaint makes plaintiff's claims a moving target; and Counts Three and Five are futile.

B.  <u>Standards governing motions to amend</u>

Under FED.R.CIV.P. 15(a)(2), "[t]he court should freely give leave [to amend] when justice so requires."  "'Refusing

leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment.'" <u>Bylin v. Billings</u>, 568 F.3d 1224, 1229 (10th Cir. 2009)(quoting <u>Frank v. U.S. West, Inc.</u>, 3 F.3d 1357, 1365 (10th Cir. 1993)). "In deciding whether a delay is 'undue,' [courts] focus primarily on the reasons for the delay." <u>Cohen v. Longshore</u>, 621 F.3d 1311, 1313 (10th Cir. 2010)(interior citation and quotation omitted). "[The Tenth Circuit has] held that denial of leave to amend is appropriate when the party filing the motion has no adequate explanation for the delay." <u>Id.</u> (interior quotation omitted). "[C]ourts have denied leave to amend where the moving party was aware of the facts on which the amendment was based for some time prior to filing the motion to amend." <u>Fed. Ins. Co. v. Gates Learjet Corp.</u>, 823 F.2d 383, 387 (10th Cir. 1987). Denial of leave to amend is particularly appropriate in cases in which the cause of action was available to the plaintiff at the time that the original complaint was filed. <u>Las Vegas Ice & Cold Storage Co. v. Far West Bank</u>, 893 F.2d 1182, 1185 (10th Cir. 1990).

C. <u>Count Three of the proposed second amended complaint is futile</u>.

Plaintiff has not responded to defendant's arguments that Counts Three and Five are futile. Count Three alleges a claim of negligent infliction of emotional distress. Defendant contends that Kansas law does not recognize such a claim unless the emotional distress is accompanied by or results in physical injury and that plaintiff makes no such allegation. Defendant's argument is generally supported by the surveys of cases cited in Stephenson v. Honeywell Intern., Inc., 669 F.Supp.2d 1259, 1262-63 (D.Kan. 2009); Tucker v. United Parcel Service, Inc., 2007 WL 2155658 *2 (D.Kan. 7/25/2007); and Schweitzer-Reschke v. Avnet, Inc., 874 F.Supp. 1187, 1196-97 (D.Kan. 1995). Here, plaintiff's proposed second amended complaint alleges that the stress caused by his alleged retaliatory cell transfer aggravated his GERD and led to pain and suffering from acid reflux, asthma attacks, and irritation. These conditions or symptoms as described in the proposed amended complaint are not significantly different from the symptoms described in the above-cited cases. Accordingly, the court shall accept defendant's argument that Count Three of the proposed second amended complaint is futile as pleaded by plaintiff.

D. Count Five of the proposed second amended complaint is not futile.

Count Five alleges "gross negligence and willful[] and wanton misconduct by the defendant intercepting, opening,

tampering, . . . and blocking . . . [p]laintiff's outgoing legal and official mail without just cause or excuse." Defendant contends that this claim should not be added to this case because plaintiff cites federal criminal statutes (18 U.S.C. §§ 1701 and 1702) which do not support a civil cause of action.[1] While the court agrees that plaintiff cannot support a civil cause of action by citation to federal criminal statutes (see Newcomb v. Ingle, 827 F.2d 675, 677 n.1 (10th Cir. 1987); Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989)), the court believes that authority exists under 42 U.S.C. § 1983 to support a claim for obstructing or tampering with plaintiff's mail without just cause or excuse, especially where (as alleged in Count Five) the interference with mail allegedly was done to retaliate for the exercise of First Amendment rights.

     E.  Leave to file the proposed second amended complaint shall be denied because of undue delay and because some of the "new" allegations either are not necessary or are futile.

     Defendant alleges that plaintiff has had since January 2012 to amend his complaint and that he has waited too long to do so. Plaintiff's response focuses on the delays he has faced in starting and proceeding with discovery. Plaintiff does not explain, however, why any of these delays prevented plaintiff from obtaining the knowledge and information necessary to plead any of the "new" allegations contained in the proposed second

_____

[1] Plaintiff also cites a state regulation, K.A.R. 44-12-601, but this would have no effect upon defendant's argument.

amended complaint. Nor does plaintiff identify how the discovery which has been completed produced "new" information providing the basis for the "new" allegations in the proposed second amended complaint. Thus, plaintiff has failed to provide an adequate explanation or justification for the items in the proposed second amended complaint which do not stem from and are not related to the allegations contained in the amended complaint.

Defendant admits that many of the facts plaintiff alleges in the proposed second amended complaint relate to and supplement the allegations of the amended complaint, but then argues that it is not really necessary for those allegations to be added to the pleadings. Plaintiff does not respond to this argument.

Because plaintiff does not adequately explain or justify the delay in offering the proposed second amended complaint or show why the amended complaint is necessary as to many of the "new" allegations, the court shall deny plaintiff's motion to amend in its entirety. This does not mean, however, that the court shall ignore the "new" allegations when considering defendant's motion for summary judgment. As just mentioned, some of these allegations are related to the amended complaint and should be considered as part of the claims made in the amended complaint.

The only claims which the court believes are outside the amended complaint are: 1) that after plaintiff was moved to C-Unit, he had mail seized and his grievances were not processed in order to block legal claims; 2) that he lost property during cell searches conducted after he was transferred to C-Unit; and 3) that he was forced to agree not to file grievances and claims in order to be permitted to move from C-3003 to a different cell in C-Unit. However, as explained later in this order, if plaintiff's § 1983 claim were amended to include these three claims, the court would still grant defendant's motion for summary judgment.

## V. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT SHALL BE GRANTED.

### A. <u>Summary judgment motion standards</u>

Summary judgment is warranted if the materials on record show that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.CIV.P. 56(a). The court views "all of the facts in the light most favorable to the non-movant and reasonable inferences from the record must be drawn in favor of the non-moving party." <u>Piercy v. Maketa</u>, 480 F.3d 1192, 1197 (10th Cir. 2007).

"Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing the

existence of a genuine factual issue to be tried.... These facts may be shown by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings by themselves." Southway v. Central Bank of Nigeria, 149 F.Supp.2d 1268, 1273 (D.Colo.2001), aff'd, 328 F.3d 1267 (10th Cir.2003). However, "[i]n order to survive summary judgment, the content of the evidence that the nonmoving party points to must be admissible .... The nonmoving party does not have to produce evidence in a form that would be admissible at trial, but the content or substance of the evidence must be admissible.... Hearsay testimony that would be inadmissible at trial cannot be used to defeat a motion for summary judgment because a third party's description of a witness' supposed testimony is not suitable grist for the summary judgment mill." Adams v. American Guarantee & Liability Ins. Co., 233 F.3d 1242, 1246 (10th Cir.2000)(interior citations and quotations omitted).

"Summary judgment is . . . appropriate when the court concludes that no reasonable juror could find for the non-moving party based on the evidence presented in the motion and response." Southway, 149 F.Supp.2d at 1273. "The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.... Unsupported allegations without 'any significant probative evidence tending to support

the complaint' are insufficient ... as are conclusory assertions that factual disputes exist." Id. (interior citations and quotations omitted). The evidence presented must be based on more than mere speculation, conjecture, or surmise to defeat a motion for summary judgment. Rice v. United States, 166 F.3d 1088, 1092 (10th Cir. 1999).

B. Uncontroverted facts

At the relevant times in this case, plaintiff was an inmate at NCF. He is now housed at the Ellsworth Correctional Facility. NCF is a facility which incarcerates over 800 men who are either classified as medium or minimum custody.

In June 2011, plaintiff filed a civil action in the district court for Butler County, Kansas and needed to pay the filing and service fees with two checks instead of one. After plaintiff learned of this, he requested that forms to withdraw money, a letter and a check be returned to him. These items were returned but were detained or misplaced, and were not received by plaintiff until August 22, 2011. On July 13, 2011, plaintiff filed a grievance and property claim concerning the return of the forms and envelopes based upon his belief that defendant Hrabe purposely diverted the forms and attempted to deny plaintiff access to court. Plaintiff continued with his grievance after the forms and the envelope were returned to him.

On September 1 and 14, 2011 property audits were conducted in plaintiff's cell, A-4135.  Defendant contends that the audits were conducted because of concerns that the amount of legal paperwork plaintiff had accumulated exceeded what was allowed under prison regulation IMPP 12-120.  Defendant Hrabe has submitted an affidavit stating that this was his motivation in approving the audits.  Plaintiff contends that the audits were conducted to retaliate against plaintiff for filing a grievance regarding the return of the forms, check and envelope. Plaintiff admits that he has frequently filed grievances, property claims and Kansas Open Records requests and that it may have appeared that plaintiff had excess property at times because plaintiff had his paperwork laid out in his cell so he could work.  Plaintiff also admits that according to IMPP 12-120, "[a]t any point in time, an inmate may be required to pack personal property in a standard transport/storage box to show that the quantity of property possessed is within the established limit."  In addition, it is admitted that the limitations on the quantity of property possessed exist for purposes of safety and security.

Plaintiff filed a grievance on September 2, 2011 concerning the September 1, 2011 property audit.  On September 14, 2011, plaintiff filed a claim regarding obstruction or interference with access to the court, alleging that defendant Hrabe's

14

actions on or about June 17, 2011 interfered with plaintiff's access to the courts. This claim was filed before the September 14, 2011 property audit.

On September 15, 2011, plaintiff was transferred from cell A-4135 to cell C-3003. Defendant Hrabe has filed an affidavit stating that plaintiff was transferred to a different cell in order to redistribute unit team caseloads and not to retaliate against him because of his legal claims and grievances. Plaintiff has filed an affidavit stating that the transfer was part of a campaign of retaliation, harassment and intimidation.

It is agreed that the corrections counselor assigned to plaintiff in C-Unit was classified as a CCII. This is a higher classification than that held by plaintiff's counselor in A-Unit, who had recently been promoted to CCI. Plaintiff's incentive level did not change when he was moved and no formal disciplinary action was taken against plaintiff. The operational schedules of A-Unit and C-Unit are identical except that the times are staggered to prevent too many inmates from being in one area at the same time.

The unencumbered square footage per inmate in cell A-4135 is 74 square feet. According to defendant, the unencumbered square footage per inmate in cell C-3003 is 28 square feet. Plaintiff has filed affidavits indicating that the square footage per inmate is less than 25 square feet. There are

inmates under restrictions or segregation inmates in A-Unit and C-Unit. Segregation inmates in C-Unit have some access to the day room, but not as much as non-segregation inmates.

The court may include other factual statements in our discussion of the summary judgment motion. These statements may be controverted, but the court shall accept the version offered by plaintiff.

C. Qualified immunity standards

Qualified immunity shields government officials performing discretionary functions from liability for damages as long as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known. Boles v. Neet, 486 F.3d 1177, 1180 (10th Cir. 2007). The privilege is an immunity from suit and when it is raised at summary judgment, the burden shifts to the plaintiff to overcome the asserted immunity. Riggins v. Goodman, 572 F.3d 1101, 1107 (10th Cir. 2009). When the defense of qualified immunity is raised, the court must consider whether plaintiff's factual allegations demonstrate that the defendant violated a constitutional right and, secondly, whether that constitutional right was clearly established at the time of the alleged violation. Id.

D. Retaliation standards

To prove a First Amendment retaliation claim, plaintiff must establish: 1) that plaintiff was engaged in constitutionally protected activity; 2) that the actions of defendant Hrabe caused plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and 3) that defendant Hrabe's actions were substantially motivated by plaintiff's exercise of constitutionally protected conduct. Shero v. City of Grove, 510 F.3d 1196, 1203 (10th Cir. 2007).

The first element is not at issue at this stage. The court assumes that plaintiff was engaged in constitutionally protected conduct when he filed grievances against defendant or others in prison administration in July and September 2011.

To prevail on the third element, plaintiff "must prove that 'but for' the retaliatory motive, the incidents to which he refers . . . would not have taken place." Peterson v. Shanks, 149 F.3d 1140, 1144 (10th Cir. 1998)(citing Smith v. Maschner, 899 F.2d 940, 949-50 (10th Cir. 1990)). "[I]t is imperative that plaintiff's pleading be factual and not conclusory. Mere allegations of constitutional retaliation will not suffice; plaintiff must, rather, allege specific facts showing retaliation because of the exercise of . . . constitutional rights." Frazier v. Dubois, 922 F.2d 560, 562 n.1 (10th Cir. 1990). Factual allegations consisting only of engagement in

protected activity "[do] not establish the requisite causal connection for [a] retaliation claim. If it did litigious prisoners could claim retaliation over every perceived slight and resist summary judgment simply by pointing to their litigiousness." Strope v. Cummings, 381 Fed.Appx. 878, 883 (10th Cir. 2010). "Standing alone and without supporting factual allegations, temporary proximity between an alleged exercise of one's right of access to the courts and some form of jailhouse discipline does not constitute sufficient circumstantial proof of retaliatory motive to state a claim." Friedman v. Kennard, 248 Fed. Appx. 918, 922 (10th Cir. 2007); see also, Weatherall v. Scherbarth, 2000 WL 223576 *2 (10th Cir. 2/28/2000); Wright v. McCotter, 1999 WL 76904 *1 (10th Cir. 2/18/1999).

Plaintiff must also prove an injury which would chill a person of ordinary firmness from continuing to engage in protected activity. "[A]n inmate is not inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he has engaged in protected activity." Strope, 381 Fed.Appx. at 883. As this court stated in a previous order, "'prisoners are expected to endure more than the average citizen.'" Doc. No. 53 at p. 10 (quoting Siggers-El v. Barlow, 412 F.3d 693, 701 (6th Cir. 2005)); see also, Poole v. County of Otero, 271 F.3d 955, 961 (10th Cir. 2001) abrogated on other grds, 547 U.S. 250

18

(2006)("prisoners may be required to tolerate more than [other citizens] . . . before a [retaliatory] action taken against them is considered adverse").

The court also remains mindful that the Tenth Circuit has commented:  "it is not the role of the federal judiciary to scrutinize and interfere with the daily operations of a state prison, and our retaliation jurisprudence does not change this role." <u>Peterson</u>, 149 F.3d at 1144.

E.   <u>Plaintiff cannot show that the cell transfer was substantially motivated by plaintiff's exercise of constitutionally protected conduct</u>.

Defendant contends that the cell transfer was not motivated by a desire to retaliate against plaintiff's protected activity. Defendant has filed an affidavit stating that the cell transfer was ordered to even out the inmate caseload for unit counselors.

Plaintiff has presented no direct evidence that the cell transfer was motivated by a retaliatory reason.  There is the circumstantial evidence of temporal proximity.  The cell change was executed the day after plaintiff filed his September 14, 2011 grievance.  But, plaintiff provides no other persuasive evidence to support his claim of a retaliatory motive or to rebut defendant's evidence of a non-retaliatory motive. Plaintiff contends that he had an Incentive Level 3 and that inmates on Incentive Level 2 and 3 are housed in A-Unit because they can obtain more personal property and the A-Unit cells have

three times more living space than the C-Unit cells.  This does not refute, however, defendant's sworn statement that all three NCF units have inmates with varying incentive levels and that plaintiff's incentive level was not reduced when he was transferred from A-Unit to C-Unit.  Nor does it rebut the alleged motivation to even out unit counselor caseloads. Plaintiff asserts that he could have been placed in a different pod in C-Unit or another floor of A-Unit.  While this may be true,[2] it does not rebut the alleged grounds for the transfer from A-Unit to C-Unit.  Nor does the record show that the cells in the different pods of C-Unit were substantially different.

In sum, plaintiff's evidence that he was transferred to C-3003 for retaliatory reasons boils down to mere temporary proximity which is insufficient to sustain a material fact issue as to defendant's motivation and the cause of plaintiff's transfer.

F.   <u>Plaintiff cannot demonstrate that the cell transfer amounts to a "chilling" injury</u>.

Cell C-3003 has significantly less space per inmate than cell A-4135.  It is a two-person cell while A-4135 is a single-person cell.  It does not lock from the inside while A-4135 does lock from the inside.  Unlike A-4135, there is a light shining into the cell C-3003 24-hours a day which caused plaintiff some

---

[2] Plaintiff does not establish that he has personal knowledge or some other acceptable foundation for this conclusion.

sleep deprivation. The significance of this interference is not evident in the record, and the pictures of the cell submitted by both sides do not indicate that the interference would be substantial. The roof leaked in C-Unit, but there is no detailed claim of how this caused injury to plaintiff. Plaintiff states in his affidavit that he was forced to shower in front of women and a camera which fed live footage to other women every day. The affidavit does not explicitly state if plaintiff was fully exposed or for what amount of time he was exposed or the distance from which he was observed or whether the observation served a legitimate penological purpose.[3] Plaintiff was a general population inmate and inmates with more restrictions were housed in A-Unit and C-Unit. But, plaintiff was exposed to more harassment and threats from inmates while he was in C-Unit. These threats were often made to coerce plaintiff to obtain commissary items for inmates on disciplinary restrictions. Plaintiff has been diagnosed with a personality disorder with compulsive and dependent features. While plaintiff was at NCF and before the events in this case, it was

---

[3] Plaintiff's affidavit states: "I was forced to shower in front of women, and a camera which fed live footage to other women every day." Doc. No. 194, Exhibit OO. Another affidavit from a different inmate in C-Unit states: "That in C-Unit Pod 3, the showers had NO privacy, whereby female staff could observe me showering in the nude, walking by or from the control station." Doc. No. 194, Exhibit PP. A third affidavit from a different inmate in C-Unit states: "I was forced to shower in front of women, and a camera which fed live footage to other women, and then I was issued a Disciplinary report for nothing more than drying off in the shower because a female staff member chose to watch me." Doc. No. 194, Exhibit QQ.

recommended that plaintiff stay in "non-multiman housing." This was not a restriction, however.

In summary, plaintiff was moved from one general population unit to another within the same correctional facility. His incentive level did not change and he was not subject to a disciplinary charge or threatened with one. He was transferred from a single-person to a double-person cell. There was substantially less space and more exposure to inmates under restriction. These inmates were more hostile or threatening, but no specific facts are alleged or documented to quantify the increased danger or harassment because of the transfer from A-Unit to C-Unit, or any disparity between plaintiff's cell in C-Unit and other cells in C-unit. There was a light shining into the cell at night which caused plaintiff some unspecified amount of sleep deprivation and, overall, plaintiff suffered some amount of increased acid reflux and asthma attacks from the stress of living in C-3003. Again, no measures or specific descriptions of sleep deprivation or health problems are in the record. We assume for the purposes of this order that female officers could observe plaintiff shower when he was in C-Unit and that this was not the case when he was in A-Unit.

The court finds that the cell transfer did not cause plaintiff such an injury that it would chill a person of ordinary firmness from continuing to engage in filing

grievances, claims or lawsuits. Key to this finding is that plaintiff was transferred from one general population unit to another. He did not suffer discipline or a change in incentive level. And there is no indication that his treatment was significantly different from the treatment of other general population inmates in C-Unit or the normal conditions of confinement endured by a great number of inmates. The differences between his conditions in A-Unit and C-Unit are acknowledged, but they are not considered to be so significant as to be chilling.

We note that the Tenth Circuit has recognized that the constitutionality of prison guards observing members of the opposite sex undressed or showering is dependent on the scope of the intrusion, the manner in which it is conducted, the justification for initiating it and the place in which it is conducted. Hayes v. Marriott, 70 F.3d 1144, 1147 (10th Cir. 1995)(referring to factors taken from Bell v. Wolfish, 441 U.S. 520, 559 (1979) in a case contesting the constitutionality of a strip search). The Tenth Circuit has not explicitly prohibited cross-gender observation of showering inmates in all situations. Id. Nor have other circuit courts. See Oliver v. Scott, 276 F.3d 736, 744-46 (5th Cir. 2002); Johnson v. Phelan, 69 F.3d 144, 146-47 (7th Cir.); Timm v. Gunter, 917 F.2d 1093, 1099-1100, 1102 (8th Cir. 1990) cert. denied, 501 U.S. 1209 (1991); Michenfelder

v. Sumner, 860 F.2d 328, 334 (9th Cir. 1988). We recognize that a correctional action need not be unconstitutional to be considered chilling for the purposes of a retaliation claim. Nevertheless, the absence of a clear violation provides the court with some background in considering what may be considered "normal" conditions of confinement.

We further note that verbal threats of physical harm and taunts are not considered sufficient to violate the Eighth Amendment. See Walker v. Spence, 2009 WL 3074612 *9 (D.Colo. 9/18/2009)(citing several Tenth Circuit cases); Teague v. Hood, 2008 WL 2228905 *13 (D.Colo. 5/27/2008). Although these cases do not involve threats or harassment from inmates, they provide some insight as to what is not considered an unusual condition of confinement.

G. **Summary judgment is warranted against any "campaign of harassment" claim.**

Plaintiff's claim of a "campaign of harassment" asks the court to consider the deleterious effects of all the alleged retaliatory actions. So, the court shall consider the cell searches or property audits in A-Unit along with the any delays in handling and processing plaintiff's AWR. The court concludes that these matters are also part of the normal conditions of confinement and that, together with the transfer to C-Unit, they do not amount to a chilling injury. In addition to the case

authority regarding cell searches the court cited in Doc. No. 53 at p. 11, the court would reference the following holdings: <u>Rueb v. Brown</u>, 504 Fed.Appx. 720, 723 (10th Cir. 12/4/2012)(tampering with mail not a chilling injury); <u>Allen v. Ferrel</u>, 2013 WL 1222127 *12 (D.Colo. 2/13/2013)(four cell searches over three months insufficient to prove illegal harassment/retaliation); <u>Fleming v. Clark</u>, 2012 WL 4343836 *6 (D.Utah 9/21/2012)(search of cell, confiscation of papers and repeatedly being placed on lockdown not a chilling injury); <u>Green v. Snyder</u>, 2012 WL 3261410 *8 (D.Colo. 5/17/2012) <u>aff'd</u>, 525 Fed.Appx. 726, 730 (10th Cir. 5/14/2013)(deliberate mishandling of grievances is not a chilling injury).

In further support of this conclusion, the court refers to <u>Rocha v. Zavaras</u>, 443 Fed.Appx. 316 (10th Cir. 9/26/2011) as we have in a previous order. In <u>Rocha</u>, the Tenth Circuit held that the plaintiff failed to allege a chilling injury when he alleged a retaliatory action which caused the plaintiff to be on restricted status as to recreation, maintained in segregated housing, called last to eat, restricted from certain purchases from canteen, prohibited from communicating with other inmates, and required to wear distinct identifying clothing.

H. <u>The constitutional right against retaliation which plaintiff asserts was not clearly established in 2011</u>.

Viewing the record in the light most favorable to plaintiff, if the court determined that all the alleged "chilling" injuries were sufficient to dissuade a person of ordinary firmness from engaging in constitutionally protected activity, the court would still sustain defendant's summary judgment motion on the grounds that the law in this matter was not "clearly established" when the actions were taken by defendant.

The "right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established." Wilson v. Layne, 526 U.S. 603, 615 (1999). The court must inquire "in light of the specific context of the case, not as a broad general proposition." Saucier v. Katz, 533 U.S. 194, 201 (2001). "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 202 (interior quotations omitted). Thus, to decide whether a right is clearly established, the court must consider "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202. "The question is not what a lawyer would learn or intuit from researching case law, but what a

reasonable person in a defendant's position should know about the constitutionality of the conduct." Young v. County of Fulton, 160 F.3d 899, 903 (2nd Cir. 1998). "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. It is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to a factual situation the officer confronts . . . If the officer's mistake as to what the law requires is reasonable . . ., the officer is entitled to the immunity defense." Saucier, 533 U.S. at 205. So, "[i]f the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." Id. at 202.

The court is unaware of controlling legal authority in 2011 which holds that a transfer from one general population unit to another in the same facility without disciplinary sanctions would be considered a chilling injury, even when the inmate is transferred from a single-person cell to a two-person cell with less space per inmate and more contact with hostile inmates and the other negative consequences described earlier. Therefore, the court finds that summary judgment is warranted because the right allegedly violated by defendant was not clearly established during the relevant period in this case.

I.  Claims outside the amended complaint would be futile if included among plaintiff's other claims.

Previously in this order the court held that the following claims made in plaintiff's proposed second amended complaint were beyond the scope of the claims in the amended complaint: 1) that after plaintiff was moved to C-Unit, he had mail seized and his grievances were not processed in order to block legal claims; 2) that he lost property during cell searches conducted after he was transferred to C-Unit; and 3) that he was forced to agree not to file grievances and claims in order to be permitted to move from C-3003 to a different cell in C-Unit.

Even if the court considered these claims as part of plaintiff's complaint, summary judgment would still be warranted for two reasons.  First, the allegations are not so serious as to chill a person of ordinary firmness from engaging in constitutionally protected activity.  Second, the record does not support a finding that the law was clearly established that these alleged negative actions would be considered "chilling."

VI.  PLAINTIFF HAS NOT DEMONSTRATED THAT THE COURT SHOULD DEFER DECIDING THE SUMMARY JUDGMENT MOTION SO THAT PLAINTIFF MAY CONDUCT ADDITIONAL DISCOVERY.

Pursuant to FED.R.CIV.P. 56(d), plaintiff filed a motion to stay time to file his opposition to defendant's motion for summary judgment so that plaintiff could conduct additional discovery.  Doc. No. 164.  He also filed an affidavit in support

of this request. Doc. No. 164-1. The court has held that we would consider this request in the context of the summary judgment motion. Doc. No. 169.

Rule 56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a summary judgment motion], the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

The Tenth Circuit has recited the following standards for considering Rule 56(d) requests: "The party requesting additional discovery must present an affidavit that identifies the probable facts not available and what steps have been taken to obtain these facts. The nonmovant must also explain how additional time will enable him to rebut the movant's allegations of no genuine issue of material fact. . . . Speculation cannot support a Rule 56(d) motion." F.D.I.C. v. Arciero, ___ F.3d ____, 2013 WL 6698127 *3 (10th Cir. 12/20/1013)(interior quotation and citation omitted). Conclusory declarations will be considered inadequate to justify relief under Rule 56(d). Abdulhaseeb v. Calbone, 600 F.3d 1301, 1310 (10th Cir. 2010).

Plaintiff's affidavit describes the issues for which he has proposed discovery. It also states that plaintiff is seeking information regarding: cell size; night-light candle power; the

leaking roof in C-Unit; the use of surveillance cameras to observe him shower and the transmission of the video to observation posts with female staff; the sharing of day room time with more dangerous and hostile inmates on disciplinary restriction; the presence of high-medium and maximum custody inmates in C-Unit; and defendant's knowledge of plaintiff's mental health issues. The affidavit also states that plaintiff seeks: discovery that defendant knew of his constitutionally protected activity; documents associated with his cell transfer; documents associated with acts of retaliation separate from the transfer, but as part of the campaign of harassment; identities of participants in the retaliatory campaign; evidence regarding the manner in which his cells and rooms were searched and by whom and for what purpose; and evidence that A-Unit had counselors who were CCII.

Plaintiff's motion and affidavit for relief under Rule 56(d) are insufficient to justify delaying the court's decision upon the summary judgment motion for the following reasons. First, plaintiff fails to identify "probable facts" available to him through additional discovery which will demonstrate that the differences between his confinement in the A-Unit cell and C-3003 are so substantial that it would chill an ordinary inmate from filing grievances and that the differences are such that the constitutional injury was clearly established in 2011.

Second, the discovery deadline has passed, though plaintiff has continued to raise objections as to limitations placed upon his discovery efforts and some discovery disputes remain pending. Upon review of the case as it currently stands, plaintiff has not persuaded the court that the issues raised in the summary judgment motion would be affected by any remaining discovery conducted under the confines of the rules and decisions adopted to control discovery in this case. Related to this finding, the court shall reject plaintiff's objections to the Magistrate Judge's denial of his motion to reconsider the Magistrate Judge's denial of plaintiff's motion to modify the scheduling order. Doc. No. 216. The reasoning of the Magistrate Judge is neither clearly erroneous nor contrary to law.

VII. PLAINTIFF'S SUPPLEMENTAL STATE LAW CLAIM SHALL BE DISMISSED WITHOUT PREJUDICE.

The preceding analysis provides the basis for dismissing plaintiff's federal law claims. Under these circumstances, the court shall decline to exercise supplemental jurisdiction over plaintiff's state claim. Lancaster v. Indep. Sch. Dist. No. 5, 149 F.3d 1228, 1236 (10th Cir. 1998).

VIII. CONCLUSION

In conclusion, plaintiff's motion for leave to file a second amended complaint (Doc. No. 182) shall be denied. Defendant's motion for summary judgment (Doc. No. 144) shall be

granted; plaintiff's federal claims shall be dismissed with prejudice and plaintiff's state law claim shall be dismissed without prejudice. Plaintiff's motion to file supplemental exhibits (Doc. No. 203) shall be granted. Plaintiff's motion for in camera review (Doc. No. 213) shall be denied. Plaintiff's objections to orders of the Magistrate Judge (Doc. Nos. 198 and 216) shall be denied. Finally, plaintiff's request for relief under Rule 56(f) (Doc. No. 164) shall be denied. By virtue of these rulings, the remaining pending motions are moot (223, 218, 207)

**IT IS SO ORDERED.**

Dated this 23rd day of January, 2014, at Topeka, Kansas.

<u>s/Richard D. Rogers</u>
Richard D. Rogers
United States District Judge