**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

MIKE D. MATSON,         )
                         )`
        Plaintiff,      )
                         )
   v.                  )    Case No. 11-3192-RDR
                         )
                         )
JOEL HRABE,          )
        Defendant.     )

**MEMORANDUM AND ORDER**

Plaintiff is a state system inmate who has brought a <u>pro se</u> civil rights action pursuant to 42 U.S.C. § 1983 alleging illegal retaliation. A significant portion of plaintiff's claims concern plaintiff's transfer from a cell in A-Unit of the Norton Correctional Facility (NCF) to cell C-3003 in C-Unit at NCF. Plaintiff alleges that the transfer was done for retaliatory reasons. On January 23, 2014, this court issued an order granting summary judgment against plaintiff's claims. Doc. No. 224. The order also denied plaintiff's motion for leave to file a second amended complaint and ruled upon some of plaintiff's objections to orders issued by the Magistrate Judge in this case.

This case is now before the court upon plaintiff's motion to alter or amend judgment pursuant to FED.R.CIV.P. 59(e). Doc. No. 226. Plaintiff's motion raises several arguments seeking modification of the court's rulings in the January 23, 2014

order.  After careful review, the motion shall be denied for the reasons which follow.[1]

I.  RULE 59(e) STANDARDS AND REPLY BRIEF STANDARDS

Grounds warranting relief under Rule 59(e) include:  1) an intervening change in the controlling law; 2) new evidence previously unavailable, and 3) the need to correct clear error or prevent manifest injustice.  <u>Servants of Paraclete v. Does</u>, 204 F.3d 1005, 1012 (10th Cir. 2000).  Such a motion "is appropriate where the court has misapprehended the facts, a party's position, or the controlling law," but it should not attempt to "revisit issues already addressed or advance arguments that could have been raised in prior briefing."  <u>Id.</u> It is not intended to provide a second chance for a party to put forth a better case.  <u>Mellon v. Cessna Aircraft Co.</u>, 64 F.Supp.2d 1061, 1063 (D.Kan. 1999).

Relief shall be denied to plaintiff because he does not satisfy the standards of Rule 59(e).  In addition, a few of plaintiff's many arguments are presented for the first time in his reply brief.  This provides an additional reason to reject some of plaintiff's arguments.  See <u>Niles v. American Airlines, Inc.</u>, 563 F.Supp.2d 1208, 1213 (D.Kan. 2008).

---

[1] The court shall grant plaintiff's amended motion for leave to file additional pages and plaintiff's amended motion to file a supplement exhibit. Doc. Nos. 236 and 238.  These motions relate to plaintiff's submissions in support of the motion to alter or amend.

II. PLAINTIFF'S MOTION IS TIMELY AS TO THE COURT'S ORDER GRANTING SUMMARY JUDGMENT, BUT NOT AS TO THE COURT'S ORDERS RULING ON NONDISPOSTIVE MOTIONS.

Defendant has made two timeliness arguments. First, defendant contends that plaintiff's amended memorandum in support of his Rule 59(e) motion was untimely and that additional arguments made in that memorandum should not be considered. Given that the court's order which plaintiff seeks to alter or amend was mailed by regular mail to plaintiff on January 23, 2014, plaintiff had 31 days to file his Rule 59(e) motion. Plaintiff filed his amended memorandum before that deadline. So, the court rejects defendant's first timeliness argument.

Defendant's second timeliness argument concerns plaintiff's challenge to the court's rulings on nondispositive motions. As already stated, the court's order granting summary judgment also ruled upon some nondispositive motions. Plaintiff's motion to alter or amend objects to or asks for reconsideration of the court's rulings on some of the nondispositive motions. Defendant asserts that plaintiff's arguments as to the nondispositive matters are untimely because Local Rule 7.3(b) requires that motions for reconsideration of nondispositive orders be filed within 14 days of the order. Plaintiff argues that since the nondispositive rulings were made in the same order that granted summary judgment, the 28-day time limit for

filing a Rule 59(e) motion should apply to the nondispositive rulings.

Support for defendant's argument may be found in <u>Welch v. Centex Home Equity Co.</u>, 224 F.R.D. 490, 493 (D.Kan. 2004). In that case, the court had denied a motion for leave to amend and granted a motion to dismiss in the same order. The plaintiff filed a motion for reconsideration within 30 days. The court held that the motion seeking reconsideration of the nondispositive motion to amend had to be filed within the time period set forth in Local Rule 7.3 (which at that time was 10 days). As for the dispositive ruling, the motion for reconsideration was untimely under Rule 59 (at that time Rule 59 motions also had to be filed within 10 days of judgment), but the motion was considered under Rule 60.

The court agrees with defendant that plaintiff's request for reconsideration of the court's rulings upon nondispositive motions is untimely. Nevertheless, the court shall proceed to discuss plaintiff's arguments for reconsideration of those rulings.

III.  THE COURT APPLIED THE CORRECT STANDARD OF REVIEW FOR THE MAGISTRATE JUDGE'S ORDERS.

Plaintiff argues that the court erred in denying plaintiff's objections to the Magistrate Judge's rulings upon motions to enforce subpoenas and motions to quash subpoenas.

4

These objections were made in Doc. No. 198. One of plaintiff's arguments is that the court applied the wrong standard of review. Plaintiff contends that the court erred by applying a "clearly erroneous" standard instead of a "de novo" standard. Plaintiff asserts that a "de novo" standard should apply to subpoena enforcement rulings, citing In re Oral Testimony of a Witness Subpoenaed Pursuant to Civil Investigative Demand No. 98-19, 182 F.R.D. 196 (E.D.Va. 1998). We reject plaintiff's argument.

As the court reads FED.R.CIV.P. 72(a), a "clearly erroneous or is contrary to law" standard applies because the order in question concerned a nondispositive matter.[2] The case cited by plaintiff was initiated as a petition to enforce a civil investigative demand to require a witness to provide testimony. Because that was the sole issue in the case, an order deciding that issue was considered a case dispositive order. Motions to quash are usually nondispositive matters. Hartford Fire Ins. Co., Inc. v. Transgroup Exp., Inc., 2009 WL 2916832 *1 (N.D.Ill. 9/1/2009). Moreover, the decision of the Magistrate Judge in that case was framed as a report and recommendation to the district court, which is always subject to de novo review. 28 U.S.C. § 636(b)(1). So, the case cited by plaintiff is distinguishable.

---

[2] Plaintiff's objections themselves were made pursuant to FED.R.CIV.P. 72(a) for "nondispositive matters." Doc. No. 198 at p. 1.

5

IV.   THE COURT'S ORDERS SUSTAINING THE MAGISTRATE JUDGE'S RULINGS AS TO MOTIONS TO ENFORCE SUBPOENAS SHALL NOT BE MODIFIED.

Plaintiff makes several arguments relating to the court's denial of objections in Doc. No. 198 to the Magistrate Judge's order (Doc. No. 188) concerning the enforcement of two subpoenas – one subpoena issued to Mr. Raymond N. Roberts and one subpoena issued to Mr. Timothy Taylor.  As noted previously, plaintiff's motion to alter or amend is untimely as to these motions.  The issues plaintiff raises are also moot in light of the court's grant of summary judgment.  Nevertheless, the court will attempt to address plaintiff's contentions.

First, plaintiff argues that the court mischaracterized the objections he made in Doc. No. 198. Plaintiff is correct that the court did not accurately characterize the full extent of the rulings in the order to which plaintiff objected. But, plaintiff does not argue why this justifies the relief he requests.  The court found and still finds that the Magistrate Judge's rulings were not clearly erroneous or contrary to law.

Under the clearly erroneous standard, the court is required to affirm a magistrate judge's order unless a complete review leaves it "with the definite and firm conviction that a mistake has been committed."  Ocelot Oil Corp. v. Sparrow Indus, 847 F.2d 1458, 1464 (10th Cir. 1988).  The court conducts an independent review of legal issues to determine whether the

ruling is contrary to law.  Sprint Comm. Co. v. Vonage Holdings
Corp., 500 F.Supp.2d 1290, 1346 (D.Kan. 2007).

Plaintiff has not shown that the Magistrate Judge's
conclusions in quashing plaintiff's subpoena to Mr. Roberts were
clearly erroneous or contrary to law.  Normally, issues relating
to a motion to quash a subpoena are a subject of discretion.
Gulley v. Orr, 905 F.2d 1383, 1386 (10th Cir. 1990).  This
includes the decision whether to quash or to modify a subpoena.
Estate of Klieman v. Palestinian Authority, 293 F.R.D. 235, 240
(D.D.C. 2013).  The Magistrate Judge quashed the subpoena
because it was vague and overly broad.  Plaintiff objected on
the grounds that the Magistrate Judge should have only modified
the subpoena or allowed it to be reserved.  But, these
objections (and their reference to Doc. Nos. 112, 113, and 127)
do not show that the Magistrate Judge's action was clearly
erroneous or an abuse of discretion.

As for the subpoena issued to Mr. Taylor, the Magistrate
Judge quashed the subpoena on the grounds of relevance or
overbreadth.  But, plaintiff was granted leave to serve a more
narrowly tailored subpoena when discovery, which had been
stayed, resumed.  Plaintiff's memorandum in support of the
motion to alter and amend and his reply brief barely mention the
subpoena issued to Mr. Taylor.  So, no credible argument can be
made for overturning the court's order sustaining the Magistrate

Judge's decision as to that subpoena. Even if the court returns to the objections made in Doc. No. 198, it is clear that the Magistrate Judge's order was not clearly mistaken. Like plaintiff's objections to quashing the Roberts subpoena, plaintiff makes a broad reference to prior pleadings (Doc. Nos. 116, 117, 140 and 141).[3] But these pleadings do not sustain plaintiff's burden of showing clear error.

In plaintiff's motion to alter or amend, he refers to the motions to quash as untimely. This argument, however, was not made in his objections in Doc. No. 198 and therefore, this court could not have erred in failing to consider it. Moreover, the timeliness question was considered by the Magistrate Judge as to the Taylor subpoena and plaintiff does not attempt to dispute the Magistrate Judge's reasoning which would appear to apply to the Roberts subpoena as well.

Plaintiff argues in his reply brief that defendant has no standing to resist plaintiff's arguments to alter and amend this court's order relating to the subpoena issues and therefore that his motion is uncontested as to those subpoenas. This argument does not demonstrate however that the court should have overturned the Magistrate Judge's order as clearly erroneous on

---

[3] As defendant notes, Judge Robinson has been critical of merely referring the district court to prior pleadings as a means to explain objections to a Magistrate Judge's order. Veson v. Atchison Hosp. Ass'n, 2006 WL 1675914 *2 (D.Kan. 6/14/2006). Plaintiff's approach to explaining his objections to the Magistrate Judge's decision deserves similar criticism.

the basis of plaintiff's rather spare argumentation and general reference to prior pleadings. Nor does it prove that this court's order caused manifest injustice.

Finally, and more pertinently, plaintiff belatedly suggests in his reply brief that he attempted to limit the scope of the subpoena issued to Mr. Roberts. This contention, however, does not reach the problem of vagueness identified by the Magistrate Judge and it fails to clearly show that the proposed modification would satisfy the concerns of overbreadth.

In sum, the court continues to find that the Magistrate Judge's order (Doc. No. 188) was not clearly erroneous or contrary to law.

V. THE COURT'S TREATMENT OF PLAINTIFF'S OBJECTIONS IN DOC. NO. 216 SHOULD NOT BE ALTERED OR MODIFIED.

Plaintiff's next argument is that the court mischaracterized Doc. No. 216 – "Plaintiff's Objections to Order of Magistrate Judge to District Court." The document refers to two orders by the Magistrate Judge, an order denying plaintiff's motion to modify the scheduling order – Doc. No. 178; and an order denying plaintiff's motion to reconsider – Doc. No. 210. Plaintiff argues that the court erred by referring the plaintiff's objections in Doc. No. 216 as relating to "the Magistrate Judge's denial of [plaintiff's] motion to reconsider the Magistrate Judge's denial of plaintiff's motion

to modify the scheduling order." Doc. No. 224 at p. 31. We see no significant error here. The Magistrate Judge's order in Doc. No. 210 denied plaintiff's motion for reconsideration (Doc No. 186) of the Magistrate's Order denying the motion to modify the scheduling order – Doc. No. 178. Those are the two orders mentioned in Doc. No. 216. Plaintiff could not timely ask for review of Doc. No. 178 by this court in Doc. No. 216. This court's consideration of Doc. No. 178 could only be accomplished by objecting to the Magistrate Judge's denial of reconsideration in Doc. No. 210. So, the court did not substantially mischaracterize Doc. No. 216.

VI. RELIEF UNDER FED.R.CIV.P. 56(d) WAS PROPERLY DENIED.

Plaintiff's next argument is that the court made a mistake of law or clear error because the court did not allow discovery to continue pursuant to FED.R.CIV.P. 56(d) and stay action upon defendant's summary judgment motion. Plaintiff asserts that the court was legally required to take this action because defendant did not file opposition to plaintiff's motion to stay in spite of the court's direction that defendant "should file a response to plaintiff's motion to stay and a reply to plaintiff's response to the motion for summary judgment." Doc. No. 169 at p. 2. Defendant did not file a response to the motion to stay, although defendant did oppose plaintiff's attempts to modify the scheduling order to extend the discovery deadline which had

expired prior to the summary judgment decision. Doc. No. 190. Because the motion to stay was "unopposed," plaintiff contends this court was required by law to grant the motion to stay. Plaintiff supports his position by citing Local Rule 7.4(b) which provides that if a responsive brief is not filed to oppose a motion, the court will decide the motion as an uncontested motion and ordinarily grant the motion without further notice. Obviously, Local Rule 7.4(b) does not command the court to grant uncontested motions under all circumstances. So, the court did not violate the Local Rules by denying plaintiff's motion to stay, particularly where defendant was generally in opposition to the extension of discovery.[4]

The denial of the motion to stay did not cause injustice for the reasons stated in the court's order. Plaintiff did not justify relief under Rule 56(d) because plaintiff did not identify "probable facts" available to him through additional discovery which would demonstrate a chilling injury or rebut defendant's claim to qualified immunity. Plaintiff contends that the court did not "liberally construe" his Rule 56(d) motion and affidavit or sufficiently consider that defendant was

---

[4] Plaintiff also argues that the absence of a response from defendant "denied" plaintiff's right to file a reply brief in which he would have raised a new argument regarding defendant's bad faith conduct in discovery. However, plaintiff at any time could have asked for leave to supplement his motion with any new evidence or argument. Of course, if the evidence or argument was not truly new, plaintiff ordinarily would not have been permitted to raise it, even in a reply brief.

in exclusive control of the information plaintiff has sought to discover. But, the court was well aware of plaintiff's <u>pro se</u> status and the circumstances of this case.

Plaintiff has attempted to extend the time and scope of discovery in various ways. It is the court's view that plaintiff has failed to demonstrate in his Rule 56(d) argumentation, his contentions for an extension of the discovery deadline, and his motion to compel discovery that the desired discovery would make a material difference to the critical issues in the summary judgment pleadings. This was the court's reason for denying plaintiff's Rule 56(d) request and plaintiff's Rule 59(e) motion fails to demonstrate that the court was mistaken.

VII. LEAVE TO FILE A SECOND AMENDED COMPLAINT WAS PROPERLY DENIED.

The court denied plaintiff leave to file a second amended complaint ("SAC") because plaintiff waited too long to make the motion, and because some of the "new" allegations were either unnecessary or futile. Before discussing plaintiff's arguments to alter this court's denial of leave to file plaintiff's SAC, the court will observe that many of plaintiff's arguments could have been raised in his briefing in support of his motion to amend the complaint. The arguments are raised for the first

time in the motion to alter or amend and, therefore, they are improper.

When the court denied leave to file the proposed SAC, the court accepted defendant's argument that Count Three was futile and noted that plaintiff had not responded to this contention from defendant. In the motion to alter or amend, plaintiff argues for the first time that Count Three of the proposed SAC – alleging "Negligent Infliction of Emotional Distress" (Doc. No. 182-1 at p. 4) – is not futile where the injurious conduct is willful or wanton or defendant acts with intent to injure. Plaintiff's argument obviously is not pertinent to Count Three, which alleged negligent infliction of emotional distress. Plaintiff's allegations, even read liberally, simply do not assert the type of physical injury which is consistent with bringing a claim under Kansas law for negligent infliction of emotional distress. Plaintiff argues that GERD can cause significant physical injury, even death. But, plaintiff has not alleged that it did cause significant physical injury in the proposed SAC. Plaintiff alleges "asthma attacks and acid re-flux into throat and lungs." Doc. 182-1 at p. 9.

In plaintiff's reply brief, he argues for the first time that defendant was aware of plaintiff's particular susceptibility to emotional distress. This argument is belatedly made. Of course, even if the court had permitted

plaintiff to amend his complaint to add Count Three, it would have been dismissed when the court declined to exercise supplemental jurisdiction over plaintiff's state law claims.

The remainder of plaintiff's argumentation does not address the case law cited in the court's order, or address the court's reasoning that the proposed SAC was untimely, unnecessary and futile. The actions plaintiff alleges occurred primarily before February 2012. Yet, plaintiff waited until November 18, 2013 (near the close of discovery) to ask for leave to amend the complaint, after he had been aware of the actions for a long period of time. The court considered some of the actions to be outside the scope of the amended complaint.[5] Therefore, the addition of these matters near the close of discovery would be prejudicial to defendant.

---

[5] For instance, plaintiff claims in the SAC that defendant seized mail and blocked plaintiff's grievances after plaintiff was moved to C-Unit. The court held that this was outside the scope of the amended complaint. Plaintiff contends that these claims should be viewed as raised by his request for injunctive relief against "molesting" mail in his amended complaint. A request for injunctive relief, however, does not suggest that there were other instances of mail or grievance interference not mentioned in the amended complaint. Plaintiff asserted in his amended complaint that defendant refused to return an envelope and stamp to plaintiff in July and August 2011. There is no indication in the amended complaint that there were other episodes of "mail molestation" occurring after he was transferred to C-Unit. Plaintiff has indicated that his first amended complaint, filed in January 2012, was by order of the court to separate his issues and not to add claims. So, episodes of mail interference after plaintiff's original complaint filed November 11, 2011, would reasonably be interpreted as a new claim or claims. Plaintiff broadens his argument in his reply brief to contend that the mail interference constituted an attempted "cover up" which could be evidence of specific intent. However, nothing in the court's order denying leave to file a SAC bars the presentation of specific intent evidence.

Plaintiff's reasons for amending the complaint are various and sometimes late in coming. In the original motion to amend, plaintiff suggests that discovery had been denied and obstructed, but also that discovery provided plaintiff with additional facts and that plaintiff could itemize the actual injuries suffered. Doc. No. 182 at p. 2. In plaintiff's reply in support of his motion for leave to file the proposed SAC he states that he waited to file the motion because he had been denied discovery so long and that several acts were not known to plaintiff until after he amended his complaint. Doc. No. 196-1 at p. 2. In the motion to alter or amend, plaintiff argues that he waited to ask for leave to amend because was trying not to waste judicial resources with several amendments and trying to resolve all the claims in one final amendment. Doc. No. 228 at p. 11. These various arguments do not adequately justify plaintiff's delay in raising some of his complaints regarding conditions he suffered or actions taken against him while he was in C-Unit. He was transferred out of C-Unit Pod 3 on March 9, 2012, more than eighteen months after he filed the motion for leave to file the proposed SAC.

Finally, the court's order denying leave to file the SAC should not be altered because plaintiff has failed to address why the proposed amendments were necessary and why they were not futile. As the court attempted to explain in our previous

order, some of the actions alleged in the proposed SAC could already be considered as part of the amended complaint. Therefore, the SAC was not necessary as to those claims. The court further held that all of the proposed amendments were not sufficient to show that defendant violated federal law against retaliation or, if he did, to rebut defendant's claim to qualified immunity.[6] Therefore, the proposed SAC was futile.

VIII. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT WAS PROPERLY GRANTED.

Plaintiff makes numerous arguments to alter or amend the court's order granting defendant's motion for summary judgment. The court shall attempt to address the arguments in the order in which they are presented.

A. Plaintiff's objections to the court's statements of uncontroverted fact do not warrant relief.

Plaintiff objects to the following statement of uncontroverted fact which is contained in the summary judgment order: "After plaintiff learned [that he needed to pay the filing and service fees for a state court action with two checks instead of one], he requested that forms to withdraw money, a letter and a check be returned to him." This statement appears fairly consistent with plaintiff's response to defendant's statement of facts. Doc. No. 194, p.3 (response to defendant's

---

[6] Plaintiff also argues that the court's order misstated defendant's position as to the motion for leave to file the SAC. Doc. No. 228 at pp. 8-9. If there was a mistake, it had no bearing upon the court's reasons for denying leave to amend.

statement of fact ("SOF") #5). Plaintiff's purported correction[7] is not what plaintiff presented as an "uncontroverted fact" or what plaintiff presented in opposition to defendant's list of uncontroverted facts, although it is not inconsistent with plaintiff's pleadings and affidavit. The long and short of the matter is that plaintiff does not explain why the alleged error by the court should lead to a different result or alter the court's analysis of the summary judgment motion.

Plaintiff objects to another of the court's statements of uncontroverted fact: "Plaintiff admits that he has frequently filed grievances, property claims and Kansas Open Records requests and that it may have appeared that plaintiff had excess property at times because plaintiff had his paperwork laid out in his cell so he could work." This statement is consistent with plaintiff's SOF # 27 (Doc. No. 194 at p. 21) and plaintiff's response to defendant's SOF # 14 (compare Doc. No. 145 at p. 4 and Doc. No. 194 at p. 6). Again, plaintiff does not explain why any correction to this statement would alter the court's findings on summary judgment.

---

[7] Plaintiff states: "The correct fact is that Plaintiff was denied the withdraw from his prison account funds to pay the sheriff's service fees for service of process. He informed his Unit Team this was denying him access to the Court, and he would be filing a civil action[] under 42 U.S.C. § 1983. [H]is Unit Team relayed this to the Defendant, with Plaintiff's directives to return the withdraw request identifying its denial. The Defendant ordered the material be returned to him instead of the Plaintiff. This directive was in direct violation of KDOC IMPP 04-103."

Plaintiff next objects to the court failing to find as an uncontroverted fact that C-Unit Pod-3 was a disciplinary unit. As the court reads the pleadings, this was not an uncontroverted fact and plaintiff did not propose it as an uncontroverted fact. Plaintiff did assert that it was uncontroverted that he had to share his day room with disciplinary restriction inmates and that administrative segregation and disciplinary segregation inmates were housed in C-Unit, Pod 3, where plaintiff was housed. Doc. No. 194, p. 21. But, these assertions were controverted. Doc. No. 215, p. 27. Plaintiff also referred to C-Unit Pod 3 as a "Disciplinary Restriction Pod" in his responses to defendant's alleged uncontroverted facts, but did not cite evidentiary support for this label. Doc. No. 194, pp. 8-10. Defendant claimed that plaintiff was not forced to spend day room time with disciplinary restriction inmates. Defendant further claimed that inmates on restriction were not housed on plaintiff's level; that segregation inmates never have contact with general population inmates; and that segregation inmates were not housed in C-Unit, Pod 3 while plaintiff was there. Defendant further claimed that segregation inmates are temporarily housed in Pod 3 of C Unit when segregation beds in A Unit are full, but that segregation inmates are never allowed in the dayroom except when escorted outside by prison staff. Doc.

No. 145, p. 7. Plaintiff did not dispute these alleged facts.
Doc. No. 194, pp. 12-13.

Plaintiff also objects that the court should have listed as an uncontroverted fact that the goal of advancement for inmates at NCF is to achieve a room in A-Unit and that disciplinary restrictions required inmates to be moved from A-Unit. Again, these alleged uncontroverted facts were not proposed as such although plaintiff did assert that it was "common knowledge among inmates that A-Unit is the honor Unit with inmates on incentive Levels 2 and 3 having priority in housing there."[8] Doc. No. 194 at p. 19.

In sum, in his motion to alter or amend plaintiff has attempted to reword his arguments in opposition to summary judgment. This is not a proper purpose for a motion to alter or amend judgment. In addition, plaintiff does not demonstrate that if the court accepted plaintiff's view of what should have been considered uncontroverted that it should have changed the court's ruling upon the summary judgment motion. The court's order focused upon the fact that plaintiff was not placed on restrictions and he was not given discipline. The court's order also focused upon the differences in the conditions of confinement between plaintiff's cell in A-Unit and his cell in C-Unit. The court considered plaintiff's alleged contact with

---

[8] Defendant objected that plaintiff made this assertion without showing personal knowledge. Doc. No. 215 at p. 25.

inmates on discipline or restrictions. The court is not convinced that plaintiff's arguments, as reworded in his motion to alter or amend, should alter the court's holding upon defendant's motion for summary judgment.

B. Plaintiff's claim that he was chilled from engaging in protected activity does not warrant relief from summary judgment.

Plaintiff objects that the court ignored plaintiff's statement that defendant's alleged retaliatory actions chilled plaintiff's engagement in protected activity. The court did not. The court noted in the summary judgment order that plaintiff asserted he was forced to agree not to file grievances and claims in order to be permitted to move from cell C-3003 to a different cell in C-Unit. Doc. No. 224 at p. 11.

The key inquiry is not subjective, it is objective. See Shero v. City of Grove, 510 F.3d 1196, 1203 (10th Cir. 2007). While plaintiff's allegation that he was chilled may provide some evidence of a chilling injury, the court concluded that it was not sufficient to establish a material fact issue as to whether the alleged adverse action would chill a person of ordinary firmness.

C. Plaintiff's arguments regarding retaliatory motive do not warrant relief from summary judgment.

Plaintiff next takes issue with the court's finding that "plaintiff's evidence that he was transferred to C-3003 for

retaliatory reasons boiled down to mere tempor[al] proximity which is insufficient to sustain a material fact issue as to defendant's motivation and the cause of plaintiff's transfer."[9] Doc. No. 224 at p. 20. Defendant raised this question in his summary judgment motion arguing that legitimate penological purposes supported the cell transfer. Doc. No. 145 at pp. 22-23. Defendant indicated that the inter-unit cell transfer was completed to balance out unit team caseloads. Plaintiff responded by arguing that if the transfer was ordered to balance out caseloads, plaintiff would have been transferred to another A-Unit room or perhaps to other C-Unit pods than Pod 3. Doc. No. 194 at p. 30. The court held that this response did not rebut the alleged grounds for the transfer and that it lacked foundation of knowledge. Plaintiff's motion to alter or amend now argues that other alleged retaliatory actions both before and after the cell transfer (such as cell searches, property losses and mail interference) supply sufficient proof of a retaliatory motive beyond temporal proximity. This, however, was not the argument plaintiff made in his response to the summary judgment motion. Plaintiff provides no good cause for waiting to raise the argument until the motion to alter or amend. In addition, although plaintiff has filed an affidavit describing post-transfer retaliatory actions, plaintiff

---

[9] In the court's order, there are typographical errors on pages 18 and 20 where the order reads "temporary proximity" instead of "temporal proximity."

describes no basis for knowing that defendant was responsible for many of the alleged retaliatory actions.

D. Plaintiff's claims that his cell transfer constituted a "chilling injury" do not warrant relief from summary judgment.

Next, plaintiff presents several arguments against the court's conclusion that plaintiff cannot demonstrate that the cell transfer amounted to a "chilling" injury. First, plaintiff asserts the court was incorrect in stating that there was a light "shining into" cell C-3003 24-hours a day that caused plaintiff some sleep deprivation, as opposed to stating that there was a light in cell C-3003 shining constantly and causing sleep deprivation. Plaintiff appears to be correct, but the court is not persuaded to alter the ruling upon the summary judgment motion. The court determined that the significance of sleep interference from the light was not evident in the record. Plaintiff's affidavit stated that the light caused "sleep deprivation." Plaintiff contends that the significance is evident from a picture plaintiff supplied as an exhibit to his summary judgment response. Doc. No. 194-3. The court disagrees. Regardless of the location of the light, the court concludes that the significance of the injury to plaintiff from sleep deprivation is not evident in the record.

Plaintiff also objects to the court's statement that plaintiff was transferred from one general population unit to

another. Plaintiff, however, does not provide support for a claim that C-Unit was something other than a general population unit.

Plaintiff claims that C-Unit Pod-3 was not a general population unit. This, however, is not clear from plaintiff's evidence. Plaintiff cites an exhibit (which was available to plaintiff at the time of his response to the summary judgment motion, but was not part of plaintiff's response) in which living unit "C3" is referred to as a "restriction unit" meaning that it is "more restricted than general population inmates." Doc. No. 126-11. Plaintiff has never described what such restrictions were and whether the restrictions were applied to plaintiff. Therefore, plaintiff's objection is not pertinent to the court's overall analysis because the court acknowledged and evaluated the less desirable living conditions alleged by plaintiff, including exposure to more inmates under restriction and exposure to inmates who were more hostile or threatening. Doc. No. 224, pp. 21-22. Plaintiff was not subject to formal discipline or a change in incentive level. And, plaintiff's treatment in C-Unit was not significantly different from the treatment of other general population inmates in C-Unit or the normal conditions of confinement endured by a great number of inmates. Plaintiff has never asserted that he was placed on restrictions or given other discipline, only that he was housed

in a unit that he has labeled a disciplinary and restriction unit, when he was previously housed in what plaintiff has labeled an "honor" unit. These labels are not sufficient to prove a chilling injury whether or not C-Unit Pod 3 is a general population unit. The court concluded in the summary judgment order that: "The differences between [plaintiff's] conditions in A-Unit and C-Unit are acknowledged, but they are not considered to be so significant as to be chilling." Doc. No. 24, p. 23. This remains the court's conclusion.

E. Plaintiff's claims regarding his right to privacy while showering do not warrant relief from summary judgment.

Next, defendant contends that the court erred in our analysis of plaintiff's claim that he was viewed by female correctional officers while showering in C-Unit. The court stated that the Tenth Circuit had ruled that the constitutionality of prison guards observing members of the opposite sex undressed or showering was dependent on the scope of the intrusion, the manner in which it is conducted, the justification for initiating it and the place in which it is conducted. See Hayes v. Marriott, 70 F.3d 1144, 1147 (10th Cir. 1995). Plaintiff makes citation to Cumbey v. Meachum, 684 F.2d 712 (10th Cir. 1982) which was referenced in his response to the summary judgment motion. Plaintiff also cites K.S.A. 22-

2521(b), K.S.A. 22-2524(a) and 28 C.F.R. § 115.15(b) which he did not mention in his response to the summary judgment motion.

The Cumbey case, which is a per curiam opinion, is not especially persuasive here, although neither is it inconsistent with our ruling on summary judgment. As the Tenth Circuit stated in Adkins v. Rodriguez, 59 F.3d 1034, 1037-38 (10th Cir. 1995):

> Although we stated in Cumbey inmates have a right to privacy limited by legitimate penological interests in prison security, the statement was addressed to a threshold determination whether plaintiff's entire action was properly dismissed as frivolous. Thus, we vacated a portion of a district court's order dismissing an inmate's complaint that female guards' regular viewing of male inmates engaged in personal activities does not "necessarily fall short of a cognizable constitutional claim." 684 F.2d at 714.

The Hayes case which this court cited in our summary judgment opinion considered the Cumbey decision and provides a more complete discussion of the issues involved. Our reliance upon Hayes should not be considered a mistake or a renunciation of Cumbey.

Plaintiff's citation to the state statutes represents new authority which could have been presented, but was not, in plaintiff's response to the summary judgment motion. In addition, K.S.A. 22-2521(b) appears to pertain to strip searches, not the situation before this court. Plaintiff's reference to 28 C.F.R. § 115.15(b) also could have been made in

response to the summary judgment motion, but plaintiff did not so do. Furthermore, it is unclear whether or how plaintiff's fact situation is at odds with the federal regulation. As the court stated, plaintiff's evidence does not indicate the extent of plaintiff's exposure, the frequency, the length of time, the distance of observation or whether a legitimate purpose existed for observation. Finally, plaintiff also does not allege that his treatment in this regard was different from that of any other inmate in C-Unit or the normal conditions of confinement endured by a great number of inmates.

F. <u>Summary judgment against plaintiff's "campaign of harassment" claim should not be altered or amended.</u>

Next, plaintiff argues that the court erred in holding that summary judgment was warranted against plaintiff's "campaign of harassment" claim. Plaintiff's argumentation mainly rehashes plaintiff's prior arguments, although plaintiff appears to expand upon the claims he described in his response to the summary judgment motion and in his affidavit in support of the response by claiming there were sixteen cell searches "in a couple of months." Doc. No. 228 at p. 20. The court sees no grounds to change our decision on plaintiff's "campaign of harassment" claim.

G. <u>The court's qualified immunity findings should not be altered.</u>

Finally, plaintiff contends the court erred by concluding that defendant's claim of qualified immunity was valid. In the summary judgment order the court quoted <u>Saucier v. Katz</u>, 533 U.S. 194, 205 (2001) as follows: "It is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to a factual situation the officer confronts . . . If the officer's mistake as to what the law requires is reasonable . . . , the officer is entitled to the immunity defense." More recently, the Supreme Court commented that: "'We do not require a case directly on point' before concluding that the law is clearly established, 'but existing precedent must have placed the statutory or constitutional question beyond debate.'" <u>Stanton v. Sims</u>, 134 S.Ct. 3, 4-5 (2013)(quoting <u>Ashcroft v. al-Kidd</u>, 131 S.Ct. 2074, 2083 (2011)). "In the absence of controlling authority, we may conclude that a constitutional right is clearly established if there is a 'robust consensus of cases of persuasive authority.'" <u>Stewart v. Beach</u>, 701 F.3d 1322, 1332 (10th Cir. 2012)(quoting <u>al-Kidd</u>, 131 S.Ct. at 2084)).

Plaintiff mainly relies upon broadly stated case law which sets out the legal principles against retaliation for the exercise of First Amendment rights.[10] But, looking at the

_____

[10] Plaintiff did not cite a single case involving retaliation for the exercise of First Amendment rights in his response to the summary judgment motion. Plaintiff cited one case for this argument in his brief in support of the motion to alter and amend. But, that case does not apply qualified immunity analysis. Plaintiff's <u>reply</u> brief in support of his motion to alter or amend

evidence presented by plaintiff regarding defendant's alleged retaliatory conduct and viewing that evidence in a light most favorable to plaintiff, we do not perceive adequate case authority to have placed defendant on fair warning that his alleged actions in this case would be considered unconstitutional. We also find it was not established beyond debate in 2011 and 2012 that plaintiff had a right not to be retaliated against in the manner alleged (with appropriate evidentiary support) by plaintiff.

IX. CONCLUSION

In conclusion, for the above-stated reasons, plaintiff's motion to alter or amend judgment (Doc. No. 226) shall be denied. Plaintiff's amended motions to file additional pages and to file a supplemental exhibit (Doc. Nos. 236 and 238) shall be granted.

**IT IS SO ORDERED.**

Dated this 1st day of May 2014, at Topeka, Kansas.


s/ Richard D. Rogers
Richard D. Rogers
United States District Judge

cites several cases including a District of Kansas case which has some similarities to the facts alleged here. None of the cases place the constitutionality of the conduct alleged in this case beyond debate; nor do they amount to a robust consensus of authority as to plaintiff's claims.